No. 24-30272

# In the United States Court of Appeals For the Fifth Circuit

ANNE WHITE HAT, RAMON MEJÍA, KAREN SAVAGE, SHARON
LAVIGNE, HARRY JOSEPH, JOHN LAMBERTSON, PETER AASLESTAD,
THEDA LARSON WRIGHT, ALBERTA LARSON STEVENS, JUDITH
LARSON HERNANDEZ, RISE ST. JAMES, 350 NEW ORLEANS,
LOUISIANA BUCKET BRIGADE,

*Plaintiffs-Appellants*,

v.

ELIZABETH B. MURRILL, in her official capacity as Attorney
General of Louisiana; M. BOFILL DUHE, in his official capacity
as District Attorney of the 16th Judicial District Attorney's
Office; BECKET BREAUX, in his official capacity as Sheriff of St.
Martin Parish,

*Defendants-Appellees.*

On Appeal from United States District Court for the
Western District of Louisiana, Case No. 6:20-cv-00983

## Appellee Brief of Attorney General Murrill

ELIZABETH B. MURRILL
Attorney General of Louisiana

J. BENJAMIN AGUIÑAGA
Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. Third Street
Baton Rouge, LA 70802
(225) 506-3746

AUTUMN HAMIT PATTERSON
Special Assistant Solicitor General

*Counsel for Appellee Elizabeth B.
Murrill, in her official capacity*

## CERTIFICATE OF INTERESTED PERSONS

Under Fifth Circuit Rule 28.2.1, a certificate of interested persons

is not required because Defendant-Appellees are governmental parties.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee believes oral argument is unlikely to significantly aid this Court's review, because this appeal involves the application of well-established legal principles.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................ii

STATEMENT REGARDING ORAL ARGUMENT ................................iii

TABLE OF CONTENTS................................................................iv

TABLE OF AUTHORITIES ..........................................................vi

INTRODUCTION ......................................................................... 1

ISSUES PRESENTED .................................................................. 3

STATEMENT OF THE CASE .......................................................... 4

    I.   BACKGROUND....................................................................... 4

        A.   The Legislature Enacts a Bipartisan Bill to Increase Protections for Critical Infrastructure........................................ 4

        B.   A Pipeline Company Begins Construction and an Expropriation Suit Is Filed. ......................................... 8

        C.   Trespassing Protesters Are Arrested but Not Prosecuted. ....................................................... 10

    II.   PROCEDURAL HISTORY...................................................... 13

        A.   Plaintiffs File Suit, Which Is Dismissed in Part and Transferred. ...................................................... 13

        B.   The District Court Grants Summary Judgment for Defendants. ...................................................... 15

SUMMARY OF THE ARGUMENT ...................................................... 18

STANDARD OF REVIEW................................................................ 20

ARGUMENT ............................................................................. 21

    I.   THRESHOLD ISSUES BAR PLAINTIFFS' CLAIMS. ............................. 21

A. Plaintiffs Have Not Established Standing to Assert Their Claims. ..............................................................21

B. The Claims Against the Attorney General Are Barred by Sovereign Immunity. ...............................30

II. PLAINTIFFS' FACIAL CLAIMS CANNOT SURVIVE SUMMARY JUDGMENT. ...................................................34

A. Facial Challenges Are Disfavored. ............................34

B. The Infrastructure Trespassing Statute Is Not Overbroad. ..........................................................36

1. The Infrastructure Trespassing Statute penalizes trespassing and does not interfere with Free Speech rights, property rights, or other lawful activities. ...................36

2. The Infrastructure Trespassing Statute does not criminalize a substantial amount of protected expressive activity. ...................................42

C. The Infrastructure Trespassing Statute is not a content-based regulation of speech. ...........................47

D. The Infrastructure Trespassing Statute Is Not Void For Vagueness. ..........................................52

III. THE DISTRICT COURT PROPERLY DISMISSED THE AS-APPLIED CLAIMS. ...........................................61

CONCLUSION ...........................................................64

CERTIFICATE OF SERVICE ...........................................66

CERTIFICATE OF COMPLIANCE .......................................67

# TABLE OF AUTHORITIES

**Cases**

*Adderley v. Florida,*
  385 U.S. 39 (1966) ...............................................1, 38, 43, 44

*Ballew v. Cont'l Airlines, Inc.,*
  668 F.3d 777 (5th Cir. 2012)....................................20, 21, 22

*Barilla v. City of Houston,*
  13 F.4th 427 (5th Cir. 2021) ...............................................28

*Bd. of Trustees of State Univ. of New York v. Fox,*
  492 U.S. 469 (1989) ...............................................................46

*Bey v. Prator,*
  53 F.4th 854 (5th Cir. 2022) ................................................38

*Broadrick v. Oklahoma,*
  413 U.S. 601 (1973) ...............................................................35

*California v. Texas,*
  593 U.S. 659 (2021) ...............................................................27

*CISPES v. FBI,*
  770 F.2d 468 (5th Cir. 1985)....................................35, 40, 51

*City of Austin v. Paxton,*
  943 F.3d 993 (5th Cir. 2019).........................................30, 32

*City of Chicago v. Morales,*
  527 U.S. 41 (1999) .........................................................52, 56

*City of El Cenizo v. Texas,*
  890 F.3d 164 (5th Cir. 2018)................................................41

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) .......................................................23, 25

vi

*Clark v. Cmty. for Creative Non-Violence,*
    468 U.S. 288 (1984) ........................................................ 43, 44

*Daniel v. City of Tampa,*
    38 F.3d 546 (11th Cir. 1994) ................................................. 56

*Doe v. Jindal,*
    No. CIV.A. 11-554-BAJ, 2011 WL 3664496
    (M.D. La. Aug. 19, 2011) ................................................. 32, 62

*Doe v. Mckesson,*
    71 F.4th 278 (5th Cir. 2023) ................................................. 48

*Doe v. Mckesson,*
    947 F.3d 874 (5th Cir. 2020) ................................................. 47

*E.T. v. Paxton,*
    41 F.4th 709 (5th Cir. 2022) ................................................. 21

*Ex parte Young,*
    209 U.S. 123 (1908) ........................................................... 30

*Flores v. City of Palacios,*
    381 F.3d 391 (5th Cir. 2004) ................................................. 63

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972) ................................................... 52, 54, 59

*Greer v. Spock,*
    424 U.S. 828 (1976) ........................................................... 38

*Heniff Transp. Sys., L.L.C. v. Trimac Transp. Servs., Inc.,*
    847 F.3d 187 (5th Cir. 2017) ................................................. 50

*Hill v. Colorado,*
    530 U.S. 703 (2000) ....................................................... 50, 60

*Hodge v. E. Baton Rouge Par. Sheriff's Office*,
  394 F. App'x 124 (5th Cir. 2010) (per curiam) ..................................... 38

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010) ....................................................................... 51, 62, 63

*Holtzclaw v. DSC Communications Corp.*,
  255 F.3d 254 (5th Cir. 2001) ................................................................ 20

*Inclusive Communities Project, Inc. v. Dep't of Treasury*,
  946 F.3d 649 (5th Cir. 2019) ............................................................... 21

*James v. Hegar*,
  86 F.4th 1076 (5th Cir. 2023) ............................................................. 24

*Johnson v. Quattlebaum*,
  664 F. App'x 290 (4th Cir. 2016) ........................................................ 55

*Kemp v. Stanley*,
  15 So.2d 1 (La. 1943) ........................................................................ 32

*Landry's, Inc. v. Ins. Co. of the State of Pennsylvania*,
  4 F.4th 366 (5th Cir. 2021) ................................................................ 64

*Langford v. City of St. Louis*,
  3 F.4th 1054 (8th Cir. 2021) .......................................................... 58, 63

*Laufer v. Mann Hosp., L.L.C.*,
  996 F.3d 269 (5th Cir. 2021) ............................................................. 24

*Lewis v. Scott*,
  28 F.4th 659 (5th Cir. 2022) .............................................................. 31

*Littlefield v. Forney Indep. Sch. Dist.*,
  268 F.3d 275 (5th Cir. 2001) ............................................................. 42

*Lloyd Corp., Ltd. v. Tanner*,
  407 U.S. 551 (1972) ....................................................................... 1, 37

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ............................................................21, 24, 27, 28

*McCullen v. Coakley,*
    573 U.S. 464 (2014) .....................................................43, 46, 49, 51, 54

*Melancon v. Trahan,*
    645 So. 2d 722 (La. Ct. App. 1994)......................................................39

*Miss. State Democratic Party v. Barbour,*
    529 F.3d 538 (5th Cir. 2008).........................................................24, 28

*Moody v. NetChoice, LLC,*
    144 S. Ct. 2383 (2024) ........................................................................34

*Munn v. City of Ocean Springs,*
    763 F.3d 437 (5th Cir. 2014)...............................................................58

*Murthy v. Missouri,*
    144 S. Ct. 1972 (2024) ..................................................................22, 25

*Norris v. Causey,*
    869 F.3d 360 (5th Cir. 2017)...............................................................62

*R.A.V. v. City of St. Paul,*
    505 U.S. 377 (1992) .............................................................................44

*Ramming v. United States,*
    281 F.3d 158 (5th Cir. 2001)...............................................................21

*Reagan Nat'l Advert. of Austin, Inc. v. City of Austin,*
    64 F.4th 287 (5th Cir. 2023) ...............................................................44

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015) .............................................................................47

*Reynolds v. Middleton,*
    779 F.3d 222 (4th Cir. 2015)...............................................................46

*Roark & Hardee LP v. City of Austin*,
   522 F.3d 533 (5th Cir. 2008) .................................................. 54

*Schneider v. New Jersey*,
   308 U.S. 147 (1939) .............................................................. 47

*Shemwell v. City of McKinney*,
   63 F.4th 480 (2023) ......................................................... 22, 29

*Speech First, Inc. v. Fenves*,
   979 F.3d 319 (5th Cir. 2020) .................................................. 26

*Spoon v. Bayou Bridge Pipeline, LLC*,
   682 F. Supp. 3d 594 (M.D. La. 2023) ..................................... 10

*State ex rel. J.A.V.*,
   558 So. 2d 214 (La. 1990) .................................................. 39, 53

*State ex rel. J.D.*,
   63 So. 3d 153 (La. Ct. App. 2011) ........................................ 37

*State v. Barras*,
   615 So. 2d 285 (La. 1993) ...................................................... 40

*State v. Brooks*,
   755 So.2d 311 (La. Ct. App. 1999) ........................................ 39

*State v. Neyrey*,
   341 So. 2d 319 (La. 1976) ...................................................... 31

*Stringer v. Whitley*,
   942 F.3d 715 (5th Cir. 2019) ............................................. 23, 28

*Sw. Airlines Co. v. Saxon*,
   596 U.S. 450 (2022) .............................................................. 48

*Tex. All. for Retired Americans v. Scott*,
 28 F.4th 669 (5th Cir. 2022) ........................................................... 30, 33

*Tex. Democratic Party v. Abbott*,
 978 F.3d 168 (5th Cir. 2020) ..................................................... 30, 31, 33

*Turner Broad. Sys., Inc. v. FCC*,
 512 U.S. 622 (1994) .......................................................................... 47

*U.S. v. Christopher*,
 700 F.2d 1253 (9th Cir. 1983) ............................................................ 55

*United States v. Abbott*,
 85 F.4th 328 (5th Cir. 2023) ............................................. 29, 30, 32, 33

*United States v. Hansen*,
 599 U.S. 762 (2023) .................................................................... 35, 45

*United States v. O'Brien*,
 391 U.S. 367 (1968) .................................................................. *passim*

*United States v. Philip Morris USA Inc.*,
 566 F.3d 1095 (D.C. Cir. 2009) ........................................................ 50

*United States v. Tansley*,
 986 F.2d 880 (5th Cir. 1993) ............................................................ 54

*United States v. Williams*,
 553 U.S. 285 (2008) .................................................................. *passim*

*Virginia v. Hicks*,
 539 U.S. 113 (2003) .............................................................. 35, 43, 47

*Voting for Am., Inc. v. Steen*,
 732 F.3d 382 (5th Cir. 2013) .......................................... 34, 35, 41, 48

*Ward v. Rock Against Racism*,
 491 U.S. 781 (1989) .................................................................. 44, 52

*Wash. State Grange v. Wash. State Republican Party,*
   552 U.S. 442 (2008) ................................................................ 34

*Whole Woman's Health v. Jackson,*
   595 U.S. 30 (2021) ................................................................. 29

*Wright v. Georgia,*
   373 U.S. 284 (1963) ............................................................... 57

**Constitutional Provisions**

La. Const. art. IV, § 8 ............................................................ 31

La. Const. art V, § 26 ............................................................ 31

**Statutes**

La. C. Cr. P. art. 572 ............................................................ 29

La. C.C. art. 13 ..................................................................... 37

La. R.S. § 14:61 ............................................................. *passim*

La. R.S. § 14:63 ............................................... 4, 36, 38, 62

**Other Authorities**

HB727, Louisiana State Legislature,
   https://www.legis.la.gov/legis/BillInfo.aspx?s=18RS&b
   =HB727&sbi=y ......................................................................... 5

## INTRODUCTION

For decades, the Supreme Court has repeatedly, "vigorously and forthrightly rejected" the assumption that "people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please." *Lloyd Corp., Ltd. v. Tanner*, 407 U.S. 551, 568 (1972) (quoting *Adderley v. Florida,* 385 U.S. 39, 47–48 (1966)). Nevertheless, this flawed assumption motivates Plaintiffs' entire case.

Plaintiffs insist that a Louisiana statute that punishes trespassing on critical infrastructure ("the Infrastructure Trespassing Statute") is facially invalid under the First Amendment. But the Statute regulates non-expressive conduct—trespassing—not protected speech and does not apply to traditional public fora. Plaintiffs remain free to express their views on pipelines (and everything else) just like everyone else: in public parks and traditional public fora, on their property, and other places where they have a right to be according to law.

Any potential burden on First Amendment rights is fanciful and greatly outweighed by the Statute's legitimate applications because, while the First Amendment protects the right to protest, it does not

create a constitutional right to trespass on private property to do so. This conclusion is buttressed by well-established precedent and the long-accepted existence of trespassing laws across the Nation. Notably, Plaintiffs' desired activity—protesting on private property against the wishes of the majority fractional owner—is also prohibited by a misdemeanor trespassing statute that Plaintiffs do not challenge.

Eager to avoid the fact that they have no viable challenge to the Infrastructure Trespassing Statute, Plaintiffs argue the Statute could apply virtually everywhere in Louisiana, making it overbroad and impermissibly vague. But this argument relies on a nonsensical interpretation of the Statute that violates basic rules of statutory interpretation. Accordingly, Plaintiffs resort to mischaracterizing the record and other misguided arguments. Such tactics underscore the meritless nature of Plaintiffs' claims and their confusion about the relevant legal standards.

The district court was right to reject Plaintiffs' claims on the merits. None can survive summary judgment. Therefore, this Court can easily affirm the judgment on that basis, or it can affirm based on threshold issues, including Plaintiffs' lack of standing.

## ISSUES PRESENTED

1.      Whether Plaintiffs established standing by (a) making vague allegations about hypothetical, future harm that is not traceable to the Infrastructure Trespassing Statute, nor redressable by issuing injunctions against Defendants, or (b) introducing only evidence of past harm despite all claims being for prospective relief.

2.      Whether the *Ex parte Young* exception applies when the Louisiana Attorney General is not charged with enforcement of the Infrastructure Trespassing Statute and Plaintiffs have failed to identify any actual or threatened enforcement action by the Attorney General.

3.      Whether the Infrastructure Trespassing Statute, which regulates only non-expressive conduct and is content neutral, is subject to facial invalidation under the First Amendment where Plaintiffs cannot show unconstitutional applications are realistic or substantially disproportionate to the Statute's lawful applications.

4.      Whether the Infrastructure Trespassing Statute is impermissibly vague when it gives fair notice of what is prohibited and provides ascertainable, objective standards for enforcement.

5. Whether the district court properly dismissed claims that the Infrastructure Trespassing Statute is unconstitutional as applied when (a) the limitations period has elapsed to prosecute Plaintiffs for the 2018 trespasses, and (b) Plaintiffs do not challenge the district court's conclusion that the as-applied challenge fails on the merits.

## STATEMENT OF THE CASE[1]

### I. BACKGROUND

#### A. The Legislature Enacts a Bipartisan Bill to Increase Protections for Critical Infrastructure.

Trespassing has long been a crime in Louisiana as in other jurisdictions. *See, e.g.*, La. R.S. §§ 14:63; 14:63.3. Misdemeanor trespassing includes not only the crime of initial unlawful entry and attempted entry, but also the crime of remaining on property that "belongs to another … after having been forbidden to do so, either orally or in writing, including by means of any sign … by any owner, lessee, or

---

[1] The statement of the case heavily relies on the Complaint and Plaintiffs' own exhibits. The Attorney General continues to contend that much of Plaintiffs' evidence is inadmissible and their purported Statement of Undisputed Facts contains improper legal conclusions and unsupported statements. ROA.1779-80, 1796-1834. Regardless, Plaintiffs' claims fail across the board. Accordingly, like the district court, this Court need not address those issues to rule for Defendants.

custodian of the property or by any other authorized person." *Id.*

§ 14:63.3(A)(1).

In 2004, Louisiana made trespassing on critical infrastructure premises a felony. It defined the crime of "[u]nauthorized entry of a critical infrastructure" as:

> the intentional entry by a person without authority into any structure or onto any premises, belonging to another, that constitutes in whole or in part a critical infrastructure that is completely enclosed by any type of physical barrier, including but not limited to: (1) chemical manufacturing facilities; (2) refineries; (3) electrical power generating facilities; (4) water intake structures and water treatment facilities; (5) natural gas transmission compressor stations; (6) LNG terminals and storage facilities; and (7) transportation facilities, such as ports, railroad switching yards, and trucking terminals.

La. R.S. § 14:61(A) (2004).

In 2018, Representative Thibaut, a Democrat, joined by a bipartisan coalition of co-sponsors, proposed H.B. 727 to amend the critical infrastructure statute. ROA.69-73. The Louisiana Legislature passed H.B. 727 with overwhelming bipartisan support after making a few modifications to take "a belt and suspenders" approach to ensuring

the bill would not cause "real or perceived" infringements of First Amendment rights. ROA.1300; *see* ROA.49.[2]

H.B. 727 expressly expands what constitutes unauthorized entry of critical infrastructure and adds a provision specifically penalizing intentional damage to critical infrastructure. *See* La. R.S. §§ 14:61, 14.61.1; ROA.49-50.[3] H.B. 727 continues to provide that unauthorized entry includes "intentional entry" onto critical infrastructure premises that are "completely enclosed" and adds that the crime also includes (1) intentionally entering restricted areas of critical infrastructure that are "completely enclosed," (2) using fraudulent documents to enter critical infrastructure, and (3) "[r]emaining upon or in the premises of a critical infrastructure after having been forbidden to do so, either orally or in writing, by any owner, lessee, or custodian of the property or by any other authorized person." La. R.S. § 14:61(A).

H.B. 727 also adds definitional provisions to § 14:61. It defines "critical infrastructure" as:

> any and all structures, equipment, or other immovable or
> movable property located within or upon chemical

---

[2] *See also* HB727, Louisiana State Legislature, https://www.legis.la.gov/legis/BillInfo.aspx?s=18RS&b=HB727&sbi=y (bill history).

[3] As Appellants note (at 2 n.1), § 14:61 was amended in 2024. To avoid confusion, this brief will cite to the 2018 version as Appellants' brief does.

> manufacturing facilities, refineries, electrical power generating facilities, electrical transmission substations and distribution substations, water intake structures and water treatment facilities, natural gas transmission compressor stations, liquified natural gas (LNG) terminals and storage facilities, natural gas and hydrocarbon storage facilities, transportation facilities, such as ports, railroad switching yards, *pipelines*, and trucking terminals, *or any site where the construction or improvement of any facility or structure referenced in this Section is occurring.*

*Id.* § 14:61(B)(1) (emphases added). And it defines pipeline as "flow, transmission, distribution, or gathering lines, regardless of size or length, which transmit or transport oil, gas, petrochemicals, minerals, or water in a solid, liquid, or gaseous state." *Id.* § 14:61(B)(3).

H.B. 727 also includes rules of construction to ensure it is not misinterpreted as infringing important rights. H.B. 727 dictates that "[n]othing in [§ 14:61] shall be construed to apply to or prevent … [l]awful assembly and peaceful and orderly petition, picketing, or demonstration for the redress of grievances or to express ideas or views regarding legitimate matters of public interest, including but not limited to any labor dispute … protected by the United States Constitution or the Constitution of Louisiana." *Id.* § 14:61(D)(1).[4] Likewise, H.B. 727

---

[4] These rules of construction appear in subpart E in the current version of the statute.

instructs that it shall not be construed as preventing "[l]awful commercial or recreational activities conducted in the open or unconfined areas around a pipeline, including but not limited to fishing, hunting, boating, and birdwatching." *Id.* § 14:61(D)(2). Finally, H.B. 727 provides that it shall not be construed to prevent property owners from exercising their ownership rights "within the limits and under the conditions established by law." *Id.* § 14:61(D)(2).

On May 30, 2018, then-Governor John Bel Edwards signed H.B. 727 into law (codified at Louisiana Revised Statute § 14:61 (the "Infrastructure Trespassing Statute") and § 14:61.1 (damage to critical infrastructure)), and the provisions went into effect on August 1, 2018. ROA.49.

## B. A Pipeline Company Begins Construction and an Expropriation Suit Is Filed.

Meanwhile, the Bayou Bridge pipeline was being built from Lake Charles to St. James, Louisiana. ROA.52, 177. The pipeline route was chosen to parallel existing infrastructure, to minimize impact on landowners, and to limit the impact on the Louisiana Coastal Zone. ROA.181, 1412. Protestors "attempt[ed] to hinder construction," including by "chain[ing] themselves to equipment" and "form[ing] 'aerial

blockades' blocking the pipeline route." ROA.1282; *see* ROA.47 (quoting article in complaint).

One portion of the Bayou Bridge pipeline, which paralleled an existing pipeline, cut through a 38-acre tract of land that had over 400 fractional property owners. ROA.178, 181, 1440. In 2017, the pipeline company entered numerous easement and right-of-way agreements for that 38-acre tract "with nearly 350 co-landowners for the Property." ROA.1414; *see* ROA.178, 215-26, 1414. The pipeline company recorded its right-of-way with St. Martin Parish on December 17, 2017. ROA.215-26.

Some fractional property owners, however, could not be located or would not consent. ROA.178, 1414. In July 2018, one fractional owner filed suit seeking an injunction against the pipeline company to stop construction; the pipeline company filed an expropriation action in state court as to the property rights of the nonconsenting fractional property owners; and some owners counterclaimed. ROA.53, 178, 1410-16. In December 2018, the pipeline company prevailed in its expropriation action but was ordered to pay just compensation to nonconsenting property owners, along with damages for trespassing and depriving them of their property rights without due process. ROA.187, 1449-53.

## C. Trespassing Protesters Are Arrested but Not Prosecuted.

Sometime in 2018 (before the expropriation action), the pipeline company began construction across the 38-acre parcel relying on the 2017 right-of-way agreements it had secured with several fractional property owners. ROA.52-53, 215-26, 1352, 1396-97. The pipeline company also obtained authorization from a majority property owner that allowed it to have law enforcement remove any third parties from the property generally and from the pipeline right-of-way specifically. ROA.255, 1352, 1378. The pipeline company gave the authorization, along with the recorded right-of-way information, to the police. ROA.1352.

In 2018, protestors repeatedly interfered with construction of the Bayou Bridge pipeline. ROA.1383-84. For example, protestors would "disrupt construction … by getting close to the construction equipment, creating safety hazards, and requiring the operators [to] shut down the machines." *Spoon v. Bayou Bridge Pipeline, LLC*, 682 F. Supp. 3d 594, 607 (M.D. La. 2023); *see id.* at 620–21 (similar); ROA. 1263-65, 1270 (similar); *see also* ROA.55 (describing August 9th protest at issue in *Spoon*). "In the first half of 2018 alone, several dozen protestors … were arrested and charged with misdemeanor trespass." ROA.46.

On August 18, 2018, a group of protestors were within the pipeline right-of-way and beneath a "tree house" or "sky pod" that "was attached to a rope that was tied to the actual pipe inside a trench that had been dug." ROA.1379-82; *see* ROA.1875, 2020. A police officer informed them that they were trespassing and would be arrested if they did not leave the area in 30 minutes. ROA.1358-61, 1379-82. After 30 minutes elapsed, the police arrested the trespassing protestors, including Plaintiffs Ramon Mejía and Kaven Savage. ROA.1379-82. On August 19th and 21st, protestors again trespassed on the pipeline right-of-way and were arrested. ROA.1384.

On September 3, 2018, protesters damaged construction equipment, including putting mud into an excavator's fuel tank, and forced the pipeline workers to stop construction. ROA.1383, 1875, 2020-21. Police observed 30–35 protestors, including Plaintiffs Savage and Ann White Hat on the dirt berm on the pipeline right-of-way. ROA.1383-84, 2020-21; *cf.* ROA.1400 (example of berm). The police officer repeatedly told the protestors that they were trespassing on critical infrastructure and needed to leave the pipeline's right-of-way. ROA.1383-84. After the officer attempted to arrest the protest leader, the other protestors

temporarily moved off the right-of-away. ROA.1384. The police pointed out that the right of way was indicated by survey stakes (wooden stakes with blue and white ribbon) and warned them not to cross the boundary. ROA.1384, 2021. When the pipeline workers resumed work, the protestors moved back on the pipeline right-of-way. ROA.1384, 2021. The protest leader said that the protesters would leave if the pipeline workers did. ROA.1384, 2021. Vastly outnumbered, the police asked the pipeline workers to leave the work site to prevent escalation and, once the workers left, the protestors left the right-of-way and went into the woods. ROA.1384, 1876, 2021. Police subsequently arrested Savage (again) and White Hat for trespassing. ROA.1384.

The arrest affidavits indicate that Plaintiffs Savage, White Hat, and Mejía ("Arrestee Plaintiffs") were arrested for remaining on land after being forbidden (a misdemeanor) and for violating the Infrastructure Trespassing Statute (a felony). ROA.1379-88.

The district attorney decided not to prosecute them and sent their counsel letters disavowing prosecution for events that took place from August to September 2018. ROA.1487-88, 1492.

## II. PROCEDURAL HISTORY

### A. Plaintiffs File Suit, Which Is Dismissed in Part and Transferred.

In 2019, Arrestee Plaintiffs, along with a few fractional property owners of the 38-acre parcel (Katherine and Peter Aaslestad,[5] Theda Larson Wright, Alberta Larson Stevens, and Judith Larson Hernandez ("Landowner Plaintiffs")) and environmental advocacy organizations and leaders (RISE St. James, 350 New Orleans, Louisiana Bucket Brigade, Sharon Lavigne, and Harry Joseph ("Advocacy Plaintiffs")), filed this suit asserting the Infrastructure Trespassing Statute (but not the misdemeanor trespassing statute) is unconstitutional. ROA.38-43. Plaintiffs named then-Attorney General Jeff Landry, the local district attorney, and the local sheriff, in their official capacities as Defendants.

Defendants moved to dismiss the case and, in the alternative, to transfer the suit from the Middle District of Louisiana to the Western District of Louisiana where the arrests occurred, the 38-acre parcel was located, and the local officials resided. ROA.148-288.

---

[5] Katherine Aaslestad is now deceased and is represented by John Lambertson. ROA.2052.

The district court granted the motion to dismiss in part and transferred the case to the Western District. ROA.550-51. The district court dismissed the Attorney General as a defendant, recognizing that Plaintiffs failed to allege "sufficient facts" to show that the *Ex parte Young* exception applied to waive sovereign immunity. ROA.572-73.

After the case was transferred, the remaining Defendants re-urged their motions to dismiss since the transferor court had reserved the merits issues for the transferee court. ROA.868-69; ROA.702-43. The transferee district court concluded that Arrestee Plaintiffs "adequately demonstrated standing based on the allegations in the Complaint," ROA.873, but that Landowner and Advocacy Plaintiffs failed to do so, ROA.886. It explained that Landowner Plaintiffs and individual Advocacy Plaintiffs failed to allege a cognizable injury and, while some organizational Advocacy Plaintiffs adequately alleged an injury, they failed to sufficiently allege causation or redressability. ROA.876-82. Accordingly, the district court dismissed all Plaintiffs other than the Arrestee Plaintiffs for lack of standing, but otherwise denied the remaining Defendants' motions. ROA.886.

## B. The District Court Grants Summary Judgment for Defendants.

In April 2022, Arrestee Plaintiffs filed a motion for summary judgment, arguing the Infrastructure Trespassing Statute is unconstitutional. ROA.968. First, they argued the Statute violates the First Amendment because (a) the Statute is content based and discriminates based on viewpoint, and (b) the Statute cannot survive strict scrutiny. ROA.979-88, 1507-17. Second, Plaintiffs argued the Statute is void for vagueness and overbroad. ROA.988-95, 1517-24. Plaintiffs also submitted a lengthy statement of purportedly undisputed facts. ROA.997-1026.

The local district attorney filed a motion for summary judgment, arguing that Plaintiffs lacked standing. ROA.1469-85. Despite disagreeing with Plaintiffs about the Statute's constitutionality, he declined to defend the statute's constitutionality "because he has no stake in that issue." ROA. 1685-88. Accordingly, Attorney General Landry intervened to defend the Statute's constitutionality and argue summary judgment should be granted for Defendants. ROA.1578-81, 1768-69, 1775-78. In his summary-judgment opposition, Landry argued that Plaintiffs lacked standing and that their motion impermissibly relied on

undisclosed witnesses and "evidence for which there is no hope of admissibility." ROA.1779-85. He also argued that the Infrastructure Trespassing Statute was not subject to strict scrutiny, because it was not content based or viewpoint discriminatory. ROA.1786-90. In addition, he argued that the Statute could survive strict scrutiny and is not unconstitutionally vague or overbroad. ROA.1790-94. Finally, he argued Plaintiffs failed to develop their as-applied challenge, which failed in any event. ROA.1794-95.

Landry also submitted a separate response to Plaintiffs' factual statement, objecting that many cited materials could not be presented "in a form that would be admissible in evidence" and relied on undeclared witnesses. ROA.1797. He additionally explained that many statements are disputed or legal statements rather than factual statements. ROA.1797-1834.

The local sheriff incorporated the Attorney General's opposition and highlighted how Plaintiffs lacked evidence showing that the Infrastructure Trespassing Statute "was carried out in a discriminatory manner." ROA.1650-52. He also challenged Plaintiffs' statement of

undisputed facts, arguing (among other things) that many statements relied on inadmissible hearsay. ROA.1659-83.

In June 2023, the district court denied Plaintiffs' summary-judgment motion in its entirety and asked for briefing "as to why" it should not grant summary judgment for Defendants. ROA.1902. After additional briefing, the district court granted summary judgment for Defendants in April 2024. ROA.2019.

*First*, the district court concluded the facial First Amendment challenge failed as a matter of law. ROA.2044. It concluded the Infrastructure Trespass Statute was not a content-based regulation of speech, making strict scrutiny review inapplicable. ROA.2028. Next, the court analyzed the forums that the Statute impacts. ROA.2034. It noted that the Statute largely impacts structures on private property and could include government-owned property that is not a public forum, such as facilities providing water or producing energy. ROA.2035-38. In contrast, it recognized that the Statute would not apply to traditional public forums. ROA.2039-40. The court reasoned that the Statute applies where the "'owner, lessee, or custodian' of the critical infrastructure has the right under state law to control access to or otherwise exclude others from

the property," which would not be the case, for example, if the pipeline was running under a public park or sidewalk. *Id.* The court then concluded that, even if the statute "incidentally restricts speech in public forums," the statute satisfies the relevant test from *United States v. O'Brien*, 391 U.S. 367 (1968). ROA.2040.

*Second*, the district court dismissed the as-applied claims. It reasoned that "the lapse of limitations … moots any claims by the Plaintiffs based on their 2018 protest and arrest." ROA.2046-47. It further noted that any claims based on a future intent to protest the pipeline also failed, because Plaintiffs do not have a constitutional right to trespass on private property to protest. ROA.2047.

*Third* and finally, the district court rejected Plaintiffs' Due Process arguments, concluding Plaintiffs misconstrue the statute, which provides "sufficient notice of the conduct it proscribes" and "specific standards sufficient to prevent arbitrary enforcement." ROA.2048-49.

Plaintiffs filed the present appeal in April 2024. ROA.2050.

## SUMMARY OF THE ARGUMENT

This Court should affirm the judgment below. There are, however, several ways to do so because Plaintiffs' case fails across the board. The

simplest is to affirm because none of the Plaintiffs have standing. They fail to allege any concrete, non-speculative injury that is traceable to the Infrastructure Trespassing Statute or redressable by a favorable judgment.

The Court can also affirm the district court on the merits. Plaintiffs misunderstand the standard for facial challenges and do not even come close to satisfying it. Plaintiffs' arguments rest on an implausible interpretation of the Statute that violates principles of statutory construction, including courts' obligation to construe state laws to be constitutional where possible.

The Infrastructure Trespassing Statute is a content-neutral regulation of trespassing, which does not apply to traditional public forums or infringe protected speech. Because the Statute does not criminalize any, much less a substantial amount of protected speech, Plaintiffs' overbreadth challenge cannot survive summary judgment.

Plaintiffs' vagueness challenge is likewise deficient. The Statute provides fair notice of what it prohibits and gives officers sufficient guidance for enforcement. And, contrary to Plaintiffs' arguments, the possibility of close cases or improper arrests does not make the Statute

vague. To hold otherwise would flout well-established precedent and render every statute void for vagueness.

Finally, Plaintiffs' as-applied challenge fares no better because the Statute is constitutional as applied to them. They forfeited any argument that they are entitled to summary judgment on their as-applied claims. Furthermore, the claims are meritless. The Statute is clear as applied to them and does not violate their constitutional rights: They have no First Amendment right to trespass on private property over the objections of the majority property owner or to protest within a pipeline right-of-way and interfere with its construction.

## STANDARD OF REVIEW

Plaintiffs challenge not only the district court's summary judgment decision, but also the earlier decisions that dismissed Advocacy and Landowner Plaintiffs for lack of standing and dismissed the Attorney General as a defendant due to sovereign immunity. The standard of review for all decisions is de novo. *Holtzclaw v. DSC Communications Corp.*, 255 F.3d 254, 257 (5th Cir. 2001) (summary judgment); *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012) (motion to dismiss). The Court can affirm the judgment "on any ground supported by the

record, even if it is different from that relied on by the district court."
*Holtzclaw*, 255 F.3d at 258; *see Ballew*, 668 F.3d at 781.

Courts can conclude subject matter jurisdiction is lacking at the motion-to-dismiss stage based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ballew*, 668 F.3d at 781 (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). Plaintiffs "constantly bear[] the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161. And, at the summary-judgment stage, plaintiffs can never "rely on 'mere allegations,' [they] 'must set forth by affidavit or other evidence specific facts' supporting standing." *Inclusive Communities Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)).

## ARGUMENT

### I. THRESHOLD ISSUES BAR PLAINTIFFS' CLAIMS.

#### A. Plaintiffs Have Not Established Standing to Assert Their Claims.

This Court does not need to reach Plaintiffs' flawed merits argument, because "Article III jurisdiction is always first" and Plaintiffs

cannot "satisfy the familiar tripartite test for Article III standing." *E.T. v. Paxton*, 41 F.4th 709, 714 (5th Cir. 2022) (quotation omitted). To have standing, plaintiffs must establish: "(A) an injury in fact; (B) that's fairly traceable to the defendant's conduct; and (C) that's likely redressable by a favorable decision." *Id.* Moreover, when plaintiffs seek "forward-looking relief," they "must establish a substantial risk of future injury that is traceable to the Government defendants and likely to be redressed by an injunction against them." *Murthy v. Missouri*, 144 S. Ct. 1972, 1993 (2024).

Landowner and Advocacy Plaintiffs fail to show Article III standing regardless of whether the Court considers (a) the complaint alone or (b) the complaint and undisputed facts. *See Ballew*, 668 F.3d at 781. Arrestee Plaintiffs failed to set forth evidence demonstrating they have standing and, at the very least, their claims are now moot. *See Shemwell v. City of McKinney*, 63 F.4th 480, 483 (2023) (per curiam) ("Reframed in the familiar taxonomy of standing," the mootness requirement "means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." (quotation omitted)).

1. Not only do Landowner Plaintiffs fail to allege facts showing standing, but the undisputed facts also demonstrate their lack of standing. Landowner Plaintiffs do not even allege that they wish to protest on their land or that the Statute is interfering with their ability to protest. ROA.1437; *see* ROA.182-83, 186-87, 2036 (indicating most have never even stepped foot on the property in which they have, at most, a .0005803 factional interest). Nor do they allege that, but for the Statute, (a) they would allow protestors to protest on their land at a specific time in the future or (b) protestors have any desire to protest on their 38-acre property now that construction of the Bayou Bridge pipeline is complete. ROA.40-41, 58, 185.

Instead, Landowner Plaintiffs allege only that they are upset about what happened in 2018, "concerned" that the new law is unclear, "desire to exercise their rights," and "*may* consider allowing guests … back on their land." ROA.40-41, 58 (emphasis added). But allegations of past harm in 2018 cannot support standing for "injunctive and declaratory relief" in the absence of "a continuing injury or threatened future injury." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). And Landowner Plaintiffs' vague allegations of hypothetical, possible harm "at some point

in the future" are "too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013); *see id.* at 414 n.5 (explaining plaintiffs failed to show standing even assuming the "substantial risk" standard differs from the "certainly impending" standard); *accord James v. Hegar*, 86 F.4th 1076, 1081 (5th Cir. 2023). Landowner Plaintiffs' lack of "sufficiently concrete plans" alone is sufficient to conclude that they lack an Article III injury. *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 273 (5th Cir. 2021); *see Lujan*, 504 U.S. at 564 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require."); *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545–46 (5th Cir. 2008) (finding no injury where plaintiffs lacked "concrete plans").

In any event, allegations and undisputed evidence show any past or possible future harm to Landowner Plaintiffs is not traceable to the Statute or Defendants. To be sure, there is evidence that the pipeline company violated the Landowner Plaintiffs' rights by starting

construction with the consent of only some property owners—which enabled Landowner Plaintiffs to recover damages in a separate suit against the pipeline company. ROA.187, 1453, 56. That is, of course, insufficient to show that the Infrastructure Trespassing Statute or Defendants caused that past harm. Indeed, the pipeline company began construction on their 38 acres before the challenged provision was enacted. ROA.53.

Any alleged interference with Landowner Plaintiffs' future ability to allow protestors onto their land is likewise not traceable to the Statute or redressable by injunctions against Defendants. The limits on Landowner Plaintiffs' ability to use their property stems from the nature of their fractional property interest and the pipeline company's right-of-way. Plaintiffs do not dispute that a co-owner of the 38-acre tract can—and did—exclude third-party protestors from the property under Louisiana property laws regarding fractional property ownership. ROA.2036 (district court opinion); 1378 (authorization for removal of trespassers); *see* ROA.35 (acknowledging that protesters "in the vicinity of pipelines or pipeline construction sites" can face misdemeanor trespass charges "if they remained on the property after being forbidden");

ROA.161-62. And Landowner Plaintiffs have no right to authorize protestors to interfere with the pipeline's operation. *See* La. Civ. Code Ann. art. 748 ("The owner of the servient estate may do nothing tending to diminish or make more inconvenient the use of the servitude."). So even if Landowner Plaintiffs have a cognizable injury, they would still have a traceability and "redressability problem." *Murthy*, 144 S. Ct. at 1995; *see Clapper*, 568 U.S. at 413 (parties cannot satisfy the traceability requirement based on speculation of whether the injury "would be under [the challenged statute] or some other authority").

2. Advocacy Plaintiffs similarly fail to show they have standing. Some of them vaguely allege "concern[]" about the law and a general intent to protest in the future near unidentified pipelines, ROA.39, 42, 59; however, they fail to allege any concrete plans that would show that any threatened enforcement is likely or imminent. *See supra* pp. 23–24. Other Advocacy Plaintiffs vaguely allege the Statute "chills" their "First Amendment expression" and "political advocacy." ROA.43, *see* ROA.60-61. Plaintiffs do not dispute the complaint lacks specificity, but rather insist details are unnecessary based on *Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020). But in that case, there were detailed allegations

(and a declaration) about members' "concrete[] plans" and intent to engage the University community in speech—exactly what Plaintiffs lack here. *See id.* at 331–32, & nn. 7–8.

Regardless, even assuming Advocacy Plaintiffs' conclusory allegations are sufficient to establish an injury in fact, they fail to allege facts showing traceability or redressability. No Advocacy Plaintiffs allege that they intend to trespass in critical infrastructure within local Defendants' jurisdiction, ROA.59-61. That means they cannot 'fairly trace' their alleged injuries to the actions of [the local] defendants," which also means their asserted injuries of "threats of prosecution" would not be redressable by injunctive or declaratory relief against them. ROA.877-78; *see California v. Texas*, 593 U.S. 659, 673 (2021) (cannot enjoin an official who does not have the power to enforce the challenged statute). Nor have they shown a substantial risk of prosecution by the Attorney General, who was properly dismissed as a defendant. ROA.569-73; *see infra* pp. 30–34.

3. Finally, Arrestee Plaintiffs failed to carry their burden to "submit affidavits or other evidence showing, through specific facts," that they have standing to assert their claims—all of which are for injunctive and

declaratory relief. *Lujan*, 504 U.S. at 563. In affidavits, Arrestee Plaintiffs assert *past* harm stemming from the felony arrests, including that the arrests have chilled their speech in the past; however, they do not assert any *future* harm or *future* chilling effect based on the Statute. ROA.1456-65 (past tense).

For example, they do not assert that, "but for" the Infrastructure Trespassing Statute, they would protest again. *See Barilla v. City of Houston*, 13 F.4th 427, 430 (5th Cir. 2021). Nor do they claim any "concrete plans" to protest on any future date or in any future area, which means they lack a sufficiently imminent injury and an injury that is traceable to Defendants. *See Lujan*, 504 U.S. at 564; *Barbour*, 529 F.3d at 545–46. And, "[b]ecause injunctive and declaratory relief 'cannot conceivably remedy any past wrong,'" Plaintiffs cannot "satisfy the redressability requirement" by offering evidence of past harm rather than "continuing injury or threatened future injury." *See Stringer*, 942 F.3d at 720. Arrestee Plaintiffs therefore have failed to show they have standing to survive summary judgment, providing another reason to affirm the district court.

Nor can Arrestee Plaintiffs avoid dismissal by arguing that, when the complaint was filed, the possibility of felony prosecution based on their 2018 trespasses was causing a continuing harm that could be redressed by declaratory or injunctive relief that would prevent their prosecution. Accepting that argument (and disregarding potential federalism and *Younger* abstention problems) would just mean this case is now moot (even assuming they had standing despite the district attorney's *nolle prosequi*).[6] Because Arrestee Plaintiffs can no longer be prosecuted due to the lapsed limitations period (as they acknowledged, ROA.976 (citing La. C. Cr. P. art. 572(A)(2)), they lack any continuing injury that could be redressed through declaratory or injunctive relief against Defendants. Accordingly, their stake in this lawsuit has fallen away, and "so too does [this Court's] jurisdiction." *Shemwell*, 63 F.4th at 483–84.

---

[6] For preservation purposes, the Attorney General also maintains her position that Arrestee Plaintiffs lack standing based on the district attorney's disavowal of an intention to bring charges for the 2018 trespasses. ROA.1781-83. To the extent *Seals v. McBee*, 898 F.3d 587 (5th Cir. 2018) precludes this argument, she contends that case was wrongly decided for the reasons articulated in Judge Jones's dissent from the denial of rehearing en banc in *Seals v. McBee*, 907 F.3d 885 (5th Cir. 2018).

## B. The Claims Against the Attorney General Are Barred by Sovereign Immunity.

The district court correctly dismissed the Attorney General as a defendant, because Plaintiffs cannot show the "narrow" *Ex parte Young* exception applies to waive sovereign immunity. *See United States v. Abbott*, 85 F.4th 328, 334 (5th Cir. 2023) (quoting *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021)). For immunity to be waived under that exception, the defendant must have "some connection with the enforcement of the act." *Ex parte Young*, 209 U.S. 123, 157 (1908). "[T]he precise scope of the requirement for a connection has not been defined," *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) ("*TDP*"), but there are "some guideposts" that direct this Court's analysis. *Tex. All. for Retired Americans v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022).

For starters, "an official must have more than 'the general duty to see that the laws of the state are implemented.'" *Id.* (quoting *TDP*, 978 F.3d at 179). Next, she "must have 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" *Id.* (quoting *City of Austin v. Paxton*, 943 F.3d 993, 999–1000 (5th Cir. 2019)). Finally, "'enforcement' means 'compulsion or constraint'": "If the official does not compel or constrain anyone to obey the challenged

law, enjoining that official could not stop any ongoing constitutional violation." *Id.*

These guideposts demonstrate the Attorney General's immunity is not waived here. Plaintiffs cannot show she is "charged with enforcement" of the Infrastructure Trespassing Statute, nor have they identified any "relevant, threatened enforcement action" by her. *See Abbott*, 85 F.4th at 334. Plaintiffs' attempts to show otherwise miss the mark.

*First*, Plaintiffs cite (at 45) the Attorney General's role as "chief legal officer of the state" and "prosecutorial and supervisory authority in criminal cases." But, at most, these provisions show she has a "general duty to enforce the law [which] is insufficient for *Ex parte Young*." *TDP*, 978 F.3d at 181; *see Tex. All.*, 28 F.4th at 674 (concluding "[t]he general duties referenced by Plaintiffs fail to show the [official's] particular duty to enforce [the challenged law]"); *Lewis v. Scott*, 28 F.4th 659, 664 (5th Cir. 2022) ("None of these [general duties] creates the relevant connection between the [official] and any of the challenged provisions.").

Moreover, Plaintiffs gloss over the constitutional limits on the Attorney General's prosecutorial and supervisory authority. Whereas

district attorneys are given general authority over criminal prosecutions, *see* La. Const. art V, § 26(B), the Attorney General only "advise[s] and assist[s]" in criminal prosecutions "*upon* the written request of a district attorney," and her authority "to institute, prosecute, or intervene in any criminal action" can be exercised only "for cause, when authorized by the court which would have original jurisdiction, La. Const. art. IV, § 8 (emphasis added). *See State v. Neyrey*, 341 So. 2d 319, 322 (La. 1976) ("[T]he Attorney General can institute a criminal proceeding for cause only after authorization by the court."); *cf. Kemp v. Stanley*, 15 So.2d 1, 4–5 (La. 1943). Plaintiffs' cited provisions thus show only that the Attorney General has an "indirect and remote" involvement in prosecuting criminal cases, *Doe v. Jindal*, No. CIV.A. 11-554-BAJ, 2011 WL 3664496, at *3 (M.D. La. Aug. 19, 2011) (quotation omitted), not that she is "statutorily tasked with enforcing the challenged law," *City of Austin*, 943 F.3d at 998.

*Second*, Plaintiffs point (at 46) to the Attorney General's role as "legal advisor to the Governor's Office of Homeland Security and Emergency Preparedness" to argue she "has a special connection" to the Statute. This argument, however, is forfeited and meritless. Plaintiffs did

not assert it below, ROA.292-95, relying only on the Attorney General's "general duty to see that the laws of the state are implemented," *City of Austin*, 943 F.3d at 999–1000. And the Attorney General's authority to give advice about homeland security and emergencies does not show she has a "particular duty" to enforce the Infrastructure Trespassing Statute that would waive her immunity. *See Abbott*, 85 F.4th at 335, 337.

*Third*, Plaintiff notes (at 46–47) that the Attorney General's website indicates that her office sometimes gives advice to district attorneys and law enforcement and can conduct or assist in prosecutions. The website, however, references the limits on the Attorney General's authority that are discussed above and does not even mention the Infrastructure Trespassing Statute.[7] Plaintiffs thus still fail to show the Attorney General "enforce[s] 'the particular statutory provision that is the subject of this litigation'" and is "compel[ling] or constrain[ing] anyone to obey the challenged law." *Tex. All.*, 28 F.4th at 672 (quoting *TDP*, 978 F.3d at 179). Plaintiffs' failure to "identify" any "relevant, threatened future enforcement" of the Infrastructure Trespassing

---

[7] *See* https://www.ag.state.la.us/Division/Criminal ("The General Prosecution Sections prosecutes violations of all types of criminal laws of the state by conducting or assisting in criminal prosecutions *pursuant to the recusal or request of District Attorneys*." (emphasis added)).

Statute by the Attorney General is yet another reason they "cannot satisfy the[] requirements to bring an *Ex parte Young* suit." *Abbott*, 85 F.4th at 334.

## II. PLAINTIFFS' FACIAL CLAIMS CANNOT SURVIVE SUMMARY JUDGMENT.

The district court got it right: Plaintiffs' facial claims are meritless. That is why Plaintiffs overlook the "daunting" standard for facial challenges, *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 387 (5th Cir. 2013), pretend the Infrastructure Trespassing Statute is vague, and advance a nonsensical interpretation of the Statute that violates basic rules of statutory construction. Because the Statute is not content based, overbroad, or unconstitutionally vague, this Court should affirm the district court.

### A. Facial Challenges Are Disfavored.

Plaintiffs gloss over the proper standard for facial challenges, because they cannot meet it. But the Supreme Court has recently confirmed the importance of adhering to that standard. *See Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024). The Supreme Court has intentionally "made facial challenges hard to win," because they "often rest on speculation" and "'threaten to short circuit the democratic

process' by preventing duly enacted laws from being implemented in constitutional ways." *Id.* (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450–51 (2008)). As this Court has put it, facial challenges are "disfavor[ed] … for good reason." *Voting for Am.*, 732 F.3d at 386–87.

That means facial invalidation should be employed "only as a last resort" and not "when a limiting construction has been or could be placed on the challenged statute." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). Courts thus exercise "judicial restraint" and construe a statute "to avoid a constitutional conflict" where possible. *Voting for Am.*, 732 F.3d at 387 (quotation omitted).

When a case "involve[es] a facial challenge to the overbreadth and vagueness of a statute, a court should first consider whether the statute is overbroad, and, assuming it is not, then whether it is unconstitutionally vague." *CISPES v. FBI*, 770 F.2d 468, 472 (5th Cir. 1985). In the First Amendment context, a law can be facially invalidated for overbreadth only if its "unconstitutional applications [are] realistic, not fanciful, and their number [are] substantially disproportionate to the statute's lawful sweep." *United States v. Hansen*, 599 U.S. 762, 770

(2023). "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 123 (2003). This is not that rare case.

**B. The Infrastructure Trespassing Statute Is Not Overbroad.**

Applying well-established principles of statutory interpretation, the Statute is not overbroad. That becomes apparent at the "first step"— construing the statute. *See United States v. Williams*, 553 U.S. 285, 293 (2008) ("The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers.").

> **1. The Infrastructure Trespassing Statute penalizes trespassing and does not interfere with Free Speech rights, property rights, or other lawful activities.**

As the district court correctly concluded, the Statute "addresses purely conduct" and "is essentially a trespass statute that targets and provides enhanced protection for a specific type of real property— property containing 'critical infrastructure' as defined in the statute." ROA.2029. And, "[l]ike a traditional trespass statute, it proscribes

unauthorized entry" or remaining on property where one does not have a right to be. ROA.2029 (emphasis added).[8]

Given the entry restrictions and the definition of "critical infrastructure" as including facilities that are "traditionally private property," the Statute will "largely impact structures on private property." ROA.2035. Private property owners generally have the right to exclude third parties from their property and, under the Infrastructure Trespassing Statute, persons violate the Statute when they refuse to leave after being forbidden by the owner, lessee, custodian, or other authorized person (such as a delegee). *See* La. C.C. art. 13 ("Laws on the same subject matter must be interpreted in reference to each other."); *State ex rel. J.D.*, 63 So. 3d 153, 157 (La. Ct. App. 2011) (off-duty police officer on security duty for apartment complex was authorized person under similarly worded trespassing statute); *see also Lloyd*, 407 U.S. at

---

[8] *Compare* La. R.S. § 14:61(A)(1)–(4) (defining "[u]nauthorized entry of a critical infrastructure" as "intentional entry by a person without authority," using "fraudulent documents" to gain entry, "remaining … after having been forbidden … by any owner, lessee, or custodian of the property or by any other authorized person," or "intentional entry into a restricted area … when the person is not authorized to enter"), *with id.* § 14:63(A) ("No person shall without authority go into or upon or remain in or upon … property, which belongs to another, including public building and structures … after having been forbidden to do so … by any owner, lessee, or custodian of the property or by any other authorized person.").

568 (recognizing that the Supreme Court "has never held that a trespasser or an uninvited guest may exercise general rights of free speech on property privately owned and used nondiscriminatorily for private purposes only").

The Statute, however, also includes critical infrastructure "that arguably could be owned and operated by government actors" or could cross public land. ROA.2037. For public property, the question of whether the Statute extends to allow the exclusion of third parties will turn on the nature of the property, including whether there is a physical barrier restricting access or whether there is an "authorized person" with the power to exclude. La. R.S. § 14:61(A).

The Statute thus would allow, for example, a governmental entity and its delegees to ask third parties to leave a city water treatment facility or other publicly owned structures that "serve very specific and important purposes unrelated to public speech." ROA.2038. After all, "[t]he State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Adderley*, 385 U.S. at 47; *accord Greer v. Spock*, 424 U.S. 828, 836–37 (1976). And this appears consistent with how Louisiana's general

trespassing statute in § 14:63.3 is interpreted. *See, e.g.*, *Bey v. Prator*, 53 F.4th 854, 858 (5th Cir. 2022) (describing how "plaintiffs attempted to enter the courthouse without passing through security screening" and "officers, who are authorized to control entry into the courthouse, refused and told the plaintiffs that if they would not pass through security, they had to leave"); *Hodge v. E. Baton Rouge Par. Sheriff's Office*, 394 F. App'x 124, 126–27 (5th Cir. 2010) (per curiam) (explaining LSU "authorizes game day marshals to handle seating and ticketing" and police had probable cause to arrest plaintiff who "did not possess a ticket for the student disability accessible section" and refused to comply with game day marshal's request to leave that section).

When it comes to traditional public forums, the definition of "unauthorized entry of a critical infrastructure" indicates that the Statute does not apply. That is because "premises" means property where an owner or other authorized person "has the right under state law to control access to or otherwise exclude others from the property," and, for traditional public forums, there would not be a person with the same sort of power to exclude third parties. ROA.2039-40, 2043; *cf. State v. Brooks*, 755 So.2d 311, 313–14 (La. Ct. App. 1999) (officer has authority to arrest

a person on a sidewalk for attempted trespass onto private property, but not for remaining on public sidewalk alone); *Melancon v. Trahan*, 645 So. 2d 722, 726 (La. Ct. App. 1994) (concluding trespassing statute did not apply to a public sidewalk); *cf. also State ex rel. J.A.V.*, 558 So. 2d 214, 216 (La. 1990) (explaining that "penal statutes [are] strictly construed" and "nothing is a crime which is not clearly and unmistakably made a crime").

The Statute then makes this indication crystal clear by providing instructions on how the Statute is to be construed—namely, as not interfering with Free Speech rights, property rights, or other lawful activities (like fishing in state waters that may be near a pipeline). *See* La. R.S. § 14:61(D). This "serves to validate a construction of the statute which avoids its application to protected expression," *CISPES*, 770 F.2d at 474; *see* La R.S. § 14:61(D)(1), and underscores that the Statute is to be construed within the larger framework of pre-existing property laws, *see id.* § 14:61(D)(2)–(3); *cf. State v. Barras*, 615 So. 2d 285, 287–88 (La. 1993) (reviewing trespassing conviction and assessing whether crawfishing brothers were on a navigable river bank (private property

subject to public use), in navigable waters (public property open to public fishing), or on flooded swamp land (private property)).

Accordingly, even assuming that Plaintiffs cited evidence to support their assertion that "every modern park, street, or public forum has a pipeline of some kind, including water, running in, under, near or through it," Appellants' Br. 24, the Statute would not give the "owner of an underground pipeline" the right to "exercise a broad right to control access" to the "traditional public forums" above the pipeline, ROA.2039-40. And, even if Plaintiffs' absurd interpretation of the Statute were plausible and the Statute could somehow be interpreted as dramatically increasing pipeline owners' rights or the State's right to exclude persons from traditional public forums, this Court "must accept a reasonable narrowing construction of a state law to preserve its constitutionality." *City of El Cenizo v. Texas*, 890 F.3d 164, 182 (5th Cir. 2018); *see Voting for Am.*, 732 F.3d at 387 ("The determination of whether a democratically enacted statute is constitutional on its face requires that 'every reasonable construction must be resorted to [ ] in order to save a statute from unconstitutionality.'" (alteration in original)).

**2. The Infrastructure Trespassing Statute does not criminalize a substantial amount of protected expressive activity.**

As properly construed, it is hard to see how the Statute criminalizes any protected expressive activity, much less "a substantial amount of protected expressive activity," which is required for a facial overbreadth challenge to succeed. *See Williams*, 553 U.S. at 297 (explaining the second step is to determine "whether the statute, as [the court] ha[s] construed it, criminalizes a substantial amount of protected expressive activity"). Even assuming the Statute somehow "incidentally restricts speech in public forums," it "survives constitutional scrutiny." ROA.2040.

This Court applies the framework from *United States v. O'Brien*— which Plaintiffs fail to mention—when analyzing "content-neutral restrictions on expressive activities" or activities that "implicate[]" "expressive conduct," such as a uniform policy. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 285–86 (5th Cir. 2001). Under that framework, a statute is constitutional if it (1) "is within the constitutional power of the Government;" (2) "furthers an important or substantial governmental interest" that is (3) "unrelated to the suppression of free expression;" and (4) "the incidental restriction on alleged First

Amendment freedoms is no greater than is essential to the furtherance of that interest." *O'Brien*, 391 U.S. at 377.

For good reason, Plaintiffs do not dispute that the Statute satisfies the first factor because it "fall[s] squarely within the police powers of the state." ROA.2041. Nor can it be seriously disputed that the Statute meets the second factor because it furthers an important and substantial government interest in "the protection of critical infrastructure" and preventing damage to that infrastructure that is essential to the State and its citizens—not to mention promotes the State's general interest in protecting property rights, including its own. ROA.2041-42, 1336; *see McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (recognizing "the legitimacy of the government's interests in ensuring public safety and order, promoting the free flow of traffic on streets and sidewalks, protecting property rights" (quotation omitted)); *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 299 (1984) ("interest in conserving park property" and "limit[ing] the wear and tear on park properties"), *cf. Adderley*, 385 U.S. at 47 (recognizing the State's "power to preserve the property under its control for the use to which it is lawfully dedicated").

The Statute also easily satisfies the third factor because "the protection of [critical infrastructure] from damage caused by unauthorized entry is unrelated to the suppression of expressive conduct" protected by the First Amendment. ROA.2041. So too is the interest in protecting property rights.

The Statute is not aimed at expression at all, *see* La. R.S. § 14:61(A), much less protected expression or other lawful activities, *see id.* § 14:61(D). Instead, it is concerned with non-expressive conduct— trespass—and its attendant harms (*e.g.*, infringement of property rights, increased risk of damage to critical infrastructure). *See Hicks*, 539 U.S. at 123 (concluding unlawful entry was "nonexpressive *conduct*" and it, "not [respondent's] speech" was the conduct "for which he is punished as a trespasser"). The fact that prohibited conduct can be combined with expressive conduct or have some expressive element does not make the prohibition related to suppressing expression. *See Clark*, 468 U.S. at 296, 299 (concluding a ban on camping in a public park "plainly served" interests "unrelated to the suppression of expression" despite its impact

on demonstrators, including those who wished to "enhance the message concerning the plight of the poor and homeless").[9]

Fourth and finally, any possible "incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *O'Brien*, 391 U.S. at 377; ROA.2041-44. The Statute "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Reagan Nat'l Advert. of Austin, Inc. v. City of Austin*, 64 F.4th 287, 293 (5th Cir. 2023) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). That is not only "[c]ommon sense," *id.* at 297, but also borne out by Plaintiffs' own pleadings and evidence that shows the pre-existing laws were not sufficient to protect property rights and critical infrastructure, *see* ROA.46 (alleging several dozen arrests were made for misdemeanor trespass in early 2018); ROA.54-57 (indicating the trespassing continued despite the earlier arrests under the misdemeanor statute). The previous

---

[9] *Cf. Adderley*, 385 U.S. at 43 ("[T]respass on jail grounds . . . can be prosecuted regardless of the fact that it is the means of protesting segregation"); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 385 (1992) ("[N]onverbal expressive activity can be banned because of the action it entails, but not because of the ideas it expresses—so that burning a flag in violation of an ordinance against outdoor fires could be punishable, whereas burning a flag in violation of an ordinance against dishonoring the flag is not.").

misdemeanor arrests did not stop unlawful trespassing on private property and interference with construction equipment. *See* ROA.1371 (describing how protesters "thr[e]w mud into the exhaust in the fuel tank of an excavator, which caused it to be inoperable" and "threw mud … all over the inside" of the guard shack).

Any possible burden on First Amendment rights is very minimal. There is simply not "a lopsided ratio" of "realistic, not fanciful" unconstitutional applications of the Statute as compared to its "lawful sweep." *Hansen*, 599 U.S. at 770. Plaintiffs' contrary arguments rely on a deeply flawed interpretation of the Statute, a vague insistence the State's interests could be served by a narrower regulation, and inapposite cases where the challenged regulations expressly applied to restrict activities in public forums. *See McCullen*, 573 U.S. at 469, 476–77 (statute criminalized standing on a "'public way or sidewalk' within 35 feet" of an abortion clinic); *Reynolds v. Middleton*, 779 F.3d 222, 225 (4th Cir. 2015) (ordinance prohibited "protected speech," including "panhandling and solicitation of charitable contributions" in highways and medians). Plaintiff provides no reason to second-guess the Louisiana legislature's bipartisan determination of what was necessary to further

important state interests. *See Bd. of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 478 (1989) (explaining the Court does "not insist[] that there be no conceivable alternative, but only that the regulation not 'burden substantially more speech than is necessary to further the government's legitimate interests,'" and is "loath to second-guess the Government's judgment to that effect").

## C. The Infrastructure Trespassing Statute is not a content-based regulation of speech.

Because Plaintiffs cannot show the Statute is overbroad applying the *O'Brien* standard, they argue the Statute is a content-based regulation of speech that is subject to, and cannot survive, strict scrutiny. This argument is wrong on every point.

A regulation is content based and subject to strict scrutiny "if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Courts assess whether "a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id.* A facially content-neutral regulation may also "be content based if its *manifest* purpose is to regulate speech because of the message it conveys." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 645 (1994) (emphasis added).

The Statute is not a regulation of speech or expressive conduct on its face, much less a content-based restriction. As a threshold matter, the Statute is a regulation of conduct—"[u]nauthorized entry" and "[r]emaining upon or in the premises of a critical infrastructure after having been forbidden to do so," *i.e.*, trespassing, La. R.S. § 14:61—not a regulation of speech or expressive conduct. *See Hicks*, 539 U.S. at 123 (describing "entry in violation of the notice-barment rule" as "nonexpressive *conduct*"). After all, "[t]he First Amendment protects protest, not trespass." *Doe v. Mckesson*, 947 F.3d 874, 878 (5th Cir. 2020) (Ho, J., concurring in denial of rehearing en banc); *see Schneider v. New Jersey*, 308 U.S. 147, 164 (1939) ("Trespasses may … be forbidden."). And, like other "non-expressive conduct," trespass "does not acquire First Amendment protection whenever it is combined with another activity that involves protected speech." *Voting for Am.*, 732 F.3d at 389; *see Doe v. Mckesson*, 71 F.4th 278, 290 (5th Cir. 2023) ("[A] protestor may be held liable for his or her own wrongful conduct, even if otherwise participating in expressive activity."), *cert. denied*, 144 S. Ct. 913 (2024).

Furthermore, even assuming the Statute regulates expressive conduct, it does not do so based on content. Whether a person violates the

Statute "'depends' not 'on what they say,' but simply on where they say it"—"Indeed, [people] can violate the [Statute] merely by standing in [the premises of a critical infrastructure], without displaying a sign or uttering a word." *McCullen*, 573 U.S. at 479–80 (internal citation omitted).

Nor does § 14:61(D)(1) transform the Statute into a content-based regulation that requires "a determination that the expression concerned 'legitimate matters of public interest.'" Appellants' Br. 39. Plaintiffs violate a cardinal principle of statutory construction—they fail to read provisions in context and the Statute as a whole. *See Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022). Section 14:61(D) instructs that the Statute does *not* interfere with pre-existing Free Speech rights, property rights, or other lawful activities. *See supra* pp. 36–41. For example, it does not authorize trespass on *private* property possessing critical infrastructure for the expression of any ideas—even ones regarding "legitimate matters of public interest"—or for recreational activities. *See* La. R.S. § 14:61(D)(1), (3). And if the property is open to the public, then the Statute does not alter the pre-existing rights to use it. *See id.* § 14:61(D)(1)–(2).

Accordingly, § 14:61(D)(1) emphasizes the continued existence of First Amendment rights, not the curtailing of those rights. This is apparent not just when § 14:61(D)(1) is read in context with the rest of § 14:61, but also when the subpart is read as a whole. Plaintiffs ignore the first half of subpart (D)(1) that provides the Statute does not apply to *any* "[l]awful assembly and peaceful and orderly petition, picketing, or demonstration for the redress of grievances." La. R.S. § 14:61(D)(1). The second half goes on to provide that the Statute also does not apply to prevent the expression of "ideas or views regarding legitimate matters of public interest, including but not limited to any labor dispute … protected by the United States Constitution or the Constitution of Louisiana." *Id.* In context, the reference to "legitimate matters" refers to the fact that not all speech is constitutionally protected, such as obscenity or true threats, in contrast to most speech that is protected, such as views about "labor disputes." *Id.*; *see Heniff Transp. Sys., L.L.C. v. Trimac Transp. Servs., Inc.*, 847 F.3d 187, 191 (5th Cir. 2017) (explaining the term "including" signifies "an illustrative and non-exhaustive list"); *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1115 (D.C. Cir. 2009) ("adding 'but not limited to' helps to emphasize the non-exhaustive nature").

Finally, Plaintiffs' purported evidence of viewpoint discrimination based on a hearing with "fewer than a handful" of legislators also does not transform the Statute into a content-based regulation. *See O'Brien*, 391 U.S. at 383–84 (explaining that the "[Supreme] Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive" and that "[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it"). Courts do not conclude a regulation is content based "simply because its enactment was motivated by the conduct of the partisans on one side" of an issue, *Hill v. Colorado*, 530 U.S. 703, 724 (2000), or "because it may disproportionately affect speech on certain topics," *McCullen*, 573 U.S. at 480. In any event, the cited transcript shows that legislators (1) were concerned about protecting, not stifling, speech, and (2) knew the Statute applied to unauthorized entry and not only damage to critical infrastructure. ROA.1300, 1311; *see CISPES*, 770 F.2d at 474 (explaining a statutory provision restating First Amendment rights "is a valuable indication of Congress' concern for the preservation of First Amendment rights").

### D. The Infrastructure Trespassing Statute Is Not Void For Vagueness.

Plaintiffs' facial Due Process challenge likewise fails. The Infrastructure Trespassing Statute is not impermissibly vague. It gives more than fair notice regarding prohibited conduct and provides objective standards to guide enforcement. Furthermore, Plaintiffs' facial claims necessarily fail because the Statute is not vague as applied to them. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010) (explaining "the rule that '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others'" "makes no exception for conduct in the form of speech"); *see infra* pp. 61–64.

For a statute to be unconstitutionally vague, it must "[1] fail[] to provide a person of ordinary intelligence fair notice of what is prohibited, or [2] [be] so standardless that it authorizes or encourages seriously discriminatory enforcement." *Williams*, 553 U.S. at 304. "[P]erfect clarity and precise guidance" are not "required even of regulations that restrict expressive activity." *Id.* (quoting *Ward*, 491 U.S. at 794). Indeed, enforcement always "requires the exercise of some degree of police judgment." *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972).

The district court correctly concluded that Plaintiffs' vagueness challenge cannot survive summary judgment. ROA.2047-49.[10] Plaintiffs argue that the Statute is vague because it applies anywhere where there is an unmarked, underground pipeline, including public parks and streets. Based on this incorrect interpretation of the Statute (rebutted above), Plaintiffs argue the Statute (1) fails to give fair notice of prohibited conduct and (2) gives law enforcement no standards for enforcement. Because the underlying assumption is wrong, these arguments necessarily fail.

*First*, there is "adequate notice of what conduct is proscribed." *Cf. J.A.V.*, 558 So.2d at 216. A person cannot accidently violate § 14:61(A)(3) even in the context of an unenclosed pipeline. Instead, to commit the crime, a person must refuse to leave the premises of a pipeline construction site or pipeline that is in a non-public forum after being "forbidden" by a person with the authority to exclude him under state

---

[10] Contrary to Plaintiffs' claims (at 26–27), the district court applied the "two-part, disjunctive vagueness test." *See* ROA.2047 ("A law is unconstitutionally vague when it '(1) fails to apprise persons of ordinary intelligence of the prohibited conduct, or (2) encourages arbitrary and discriminatory enforcement.'" (quoting *City of Chicago v. Morales*, 527 U.S. 41, 90 (1999)); ROA.2048 ("The Court concludes that the operative language of Section 14:61 provides any ordinary person with sufficient notice of the conduct it proscribes and that it provides specific standards sufficient to prevent arbitrary enforcement.").

law. La. R.S. § 14:61(A)(3); *cf. McCullen*, 573 U.S. at 495 ("To determine whether a protestor intends to block access to a clinic, a police officer need only order him to move. If he refuses, then there is no question that his continued conduct is knowing or intentional.").

As the Attorney General has explained, "premises" in this context is limited to (1) private land or public property that is not generally open to the public and (2) a pipeline and its associated right-of-way. ROA.1941-42, 1944.[11] The Statute's prohibition in the pipeline context is thus understandable by "ordinary people"—a person cannot remain on a pipeline, pipeline right-of-way, or construction site on private property

---

[11] Contrary to Plaintiffs' claims (at 24, 32), the Attorney General did *not* interpret the Statute as applying to all land with underground pipelines (such as public sidewalks and traditional public forums), and *did* explain how to ascertain what property is covered: "work-a-day property law," "servitudes recorded at parish court houses," and "obvious surface markings." ROA.1792; *see, e.g.*, ROA.1785 (explaining the Statute does not create a "risk of arrest for trespass on otherwise open public property"); 1788-89 (describing the Statute as targeting "trespass on private property" and "the unprotected conduct of trespassing"); 1941-42 (explaining the Statute is limited to conduct on "private property or in non-public forums," the existence of a pipeline "is definitively ascertainable," and "[t]he associated right of way is generally recorded in parish land records, and is in many cases obvious or marked by signs"). Moreover, the district attorney did not offer a "conflicting" interpretation as Plaintiff suggests (at 32–33). He simply emphasized (like the Attorney General) that the Statute largely applies to enclosed critical infrastructure, *compare* ROA.284, *and* ROA.737, *with* ROA.163, and that the Landowner Plaintiffs' rights over the property are not exclusive, *compare* ROA.739-40 (quoting an expropriation judgment regarding the pipeline company's rights over a right-of-way across the 38-acre property), *with* ROA.161 (discussing fractional property rights, servitude rights, and expropriation proceeding).

(or public property that is not a public forum) when an owner or other authorized person instructs them to leave. *See Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 552 (5th Cir. 2008) (disagreeing that an ordinance "must delineate the exact actions" necessary to avoid liability).

Plaintiffs disagree, insisting (at 30–31) "there is virtually no way for anyone … to readily determine in many cases what constitutes the 'boundary' of the 'premises' of a pipeline" and suggesting a statute must specify exactly how far a pipeline's premises extend, in terms of feet, to survive a vagueness challenge. That is false. A statute need only define the offense with "a *reasonable degree of certainty*." *Roark & Hardee*, 522 F.3d at 552–53 (quoting *United States v. Tansley*, 986 F.2d 880, 885 (5th Cir. 1993)); *see Grayned*, 408 U.S. at 111 & n.17 (recognizing that regulations prohibiting conduct "'adjacent' to the school" or "'near' the courthouse" were "not impermissibly vague"); *U.S. v. Christopher*, 700 F.2d 1253, 1258–59 (9th Cir. 1983) (rejecting argument that regulation was impermissibly vague due to phrases "normal working hours" and "entry upon property" because it did not give warning that "the grassy area in the corner of the federal complex falls within the scope of regulation"). And it makes sense that the Legislature would want to

adopt a standard that accounts for pipelines and rights-of-way of varying widths. *See Johnson v. Quattlebaum*, 664 F. App'x 290, 294–95 (4th Cir. 2016) (rejecting argument that a statute prohibiting "profane speech" within "hearing distance" of a school or church was vague because it did not "stat[e] an exact distance," because "the Supreme Court has never required this kind of precision" and the "legislature may have desired a flexible standard to account for the fact that speech can vary in volume").

In any event, property records and other legal documents will show who has authority over the property, including how far the pipeline's right-of-way will extend on a given piece of property and the scope of the servitude rights. And there will often be, as there were here, visible markers indicating a pipeline's right-of-way and other physical indicators of an active construction site. ROA.1349, 1358, 1360, 1370. Furthermore, the Statute provides another safeguard where the infrastructure is not completely enclosed—it only applies to persons who continue to remain on property after being forbidden, La. R.S. § 14:61(A)(3), thereby ensuring clear notice of what conduct is prohibited, *cf. J.A.V.*, 558 So. 2d at 216 (concluding general trespassing statute is "clearly worded" and "[a]ny reasonable person can understand that the statute proscribes …

remaining on property belonging to another without authority and after having been forbidden to do so"); *Daniel v. City of Tampa*, 38 F.3d 546, 550 (11th Cir. 1994) (concluding a State's "trespass after warning statute is not void for vagueness" and "provides citizens with clear notice of what is prohibited").[12]

At most, Plaintiffs offer speculation (at 25, 29–31) that there might be close cases due to confusion about the extent of the right-of-way, scope of servitude rights, or whether a recorded right-of-way is valid, but that does not deprive citizens of fair notice regarding what the Statute prohibits. *See Williams*, 553 U.S. at 305 (criticizing the "mistake" of believing "that the mere fact that close cases can be envisioned renders a statute vague"). Indeed, if it were otherwise, it is hard to imagine any trespassing statute that could survive. And any problem posed by "[c]lose

---

[12] Plaintiffs suggest (at 29–30) that a request to leave is irrelevant in determining whether a Statute provides fair notice based on *Wright v. Georgia*, 373 U.S. 284 (1963), and *Morales*. Neither case, however, stand for that proposition or considered a statute similar to the Infrastructure Trespassing Statute. In *Wright*, the Supreme Court concluded that a breach-of-the-peace statute was unconstitutionally vague as applied as to petitioners who were playing basketball at a public park one afternoon when officers ordered them to leave due to their skin color. *See* 373 U.S. at 286, 292–93. In *Morales*, only three justices signed on to the portion of the opinion that Plaintiffs cite, which reasoned that "[i]f the loitering is in fact harmless and innocent, the dispersal order itself is an unjustified impairment of liberty" and ordinary citizens are not given the "kind of advance notice that will protect the putative loiter from being ordered to disperse." 527 U.S. at 58–59.

cases" "is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." *Id.* at 306.

*Second*, the Statute provides law enforcement with objective standards to guide enforcement as it relates to pipelines under § 14:61(A)(3). There must be (1) a pipeline construction site or pipeline on private property (or on public property that is not open to the public) and (2) a person who has refused to leave the construction site or pipeline right-of-way despite (3) a request made by a person with legal authority. *See* La. R.S. § 14:61(A)(3), (B)(1),(3); *see supra* pp. 36–41, 54–55. Officers therefore have ascertainable, objective standards to apply in determining whether the Statute is being violated, which means the Statute is not vague. *See Williams*, 553 U.S. at 306 ("What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."); *Munn v. City of Ocean Springs*, 763 F.3d 437, 438 (5th Cir. 2014) (rejecting a vagueness challenge where the ordinance "imposes an admittedly objective standard of conduct in its enforcement" by "prohibit[ing] noise that annoys … a reasonable person of ordinary sensibilities"); *Langford v. City*

*of St. Louis*, 3 F.4th 1054, 1059 (8th Cir. 2021) ("That officers must employ some degree of judgment in determining whether a person has positioned herself in a manner that obstructs the reasonable flow of traffic does not render the ordinance unconstitutional.").

Plaintiffs cannot seriously dispute this, which is why they resort to mischaracterizing the record. Defendants do not and did not argue for conflicting interpretations of the Statute. *See supra* n. 11. And Plaintiffs overstate the differences between the testimony of Sergeant Martin and Captain Gauthier regarding vague, hypothetical applications of the Statute.[13] Not only were the officers responding to different sets of confusing and objected-to questions, *e.g.*, ROA.1831-34, but they also were relying on different information. Captain Gauthier brought a copy of the Infrastructure Trespassing Statute with him, ROA.1356, whereas Sergeant Martin emphasized he did not "remember verbatim" and does

---

[13] *Compare* ROA.1352 (Sergeant Martin testifying he would not enforce the Statute to a pipeline that is "not clearly marked"), *with* ROA.1360 (Captain Gauthier testifying he would enforce the Statute based on "survey lines placed there by the surveyors"), *and* ROA.1361 ("I really don't know how to answer that question"), ROA.1362-33 (testifying that, when the pipeline is underground, he would "confirm that there's a pipeline there" and then would "establish the boundary of being the clear cut portion at the sides of the pipeline"), *and* ROA.1363 (explaining "it's hard for [him] to answer these hypothetical questions" without all the details that would be in a trespassing complaint made to police).

not "have the actual statute in front of him," ROA.1352. In any event, a disagreement between a few officers about how to interpret a statute or how it would apply in vague, hypothetical situations does not make a statute vague. *See Williams*, 553 U.S. at 304–05 ("close cases" do not make a statute vague); *Grayned*, 408 U.S. at 114 (a statute is not vague because "enforcement requires the exercise of some degree of police judgment"). Plaintiffs' "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack" on the Statute, which "is surely valid 'in the vast majority of its intended applications.'" *Hill*, 530 U.S. at 733.

Plaintiffs' disagreement (at 34) with an officer's decision to arrest Plaintiffs Savage and Mejía also does not show the Statute is vague, but rather highlights that Plaintiffs misunderstand the vagueness inquiry.[14]

---

[14] It also further illustrates Plaintiffs' misleading characterization of the record. Sergeant Martin testified that he could determine Plaintiffs Savage and Mejía were within the pipeline's right-of-way because (1) another officer told him that they "were standing directly under the tripod [in the tree] in relation to the pipeline," and (2) the sky pod "was still hanging from the tree" and was within the pipeline based on remaining marker stakes that the protestors had not removed. ROA.1349. Additionally, Captain Gauthier testified that (1) he saw them under the trees and within the boundaries of the survey markers, (2) they refused instructions to leave, and (3) he spoke to Sergeant Martin about it. ROA.1358-59; *see* ROA.1360 ("[T]hey were clearly within the survey lines. I determined that that was the premise of the pipeline or construction site."). The arrest affidavits were consistent with this testimony and added that the sky pod that was hanging above Plaintiffs Savage and

Regardless of who is right about where Plaintiffs were standing, there is no "indeterminacy" about what facts—whether Plaintiffs were within the pipeline right-of-way—are relevant in determining whether the Infrastructure Trespassing Statute was violated. *See Williams*, 553 U.S. at 306.

## III. THE DISTRICT COURT PROPERLY DISMISSED THE AS-APPLIED CLAIMS.

Not only is the Statute valid in the vast majority, if not all, of its applications, but it is also valid as applied to Plaintiffs.

As a preliminary matter, Plaintiffs lack standing and the "lapse of limitations … moots any claims by the [Arrestee] Plaintiffs based on their 2018 protest and arrest." ROA.2046-47; *see supra* pp. 27–29. Moreover, Plaintiffs' failure to articulate proposed conduct with any degree of specificity, precludes a true as-applied challenge, which explains why they made only "a passing reference" to their as-applied claims in their summary-judgment motion. ROA.1794-95. They similarly fail to press their as-applied claims to this Court. Plaintiffs' as-applied claims thus

---

Meíja was "attached to a rope that was tied to the actual pipe inside a trench that had been dug." ROA.1379, 1381.

fail for another threshold reason besides standing: they have forfeited any argument that Plaintiffs are entitled to summary judgment on them.

Although Plaintiffs argue the district court's mootness determination was wrong (at 43–44), they do not challenge its conclusion that (1) "[t]o the extent that [Arrestee] Plaintiffs" argue the "statute is unconstitutional as applied to a future anticipated protest[] of the Bayou Bridge Pipeline on private property, the Plaintiffs lack a constitutionally protected right to protest on private property," and (2) Plaintiffs "cannot maintain an 'as applied' challenge … based on the summary judgment record and relevant authorities." ROA.2047. Nor do Plaintiffs make any clear argument that the Statute is unconstitutional as applied to them. Because Plaintiffs "neither advance[] an argument" challenging the district court's rejection of their as-applied claims on the merits "nor offer[] case law" in support of such an argument, they have "forfeited" it. *Norris v. Causey*, 869 F.3d 360, 373 n.10 (5th Cir. 2017).

In any event, the Infrastructure Trespassing Statute is unquestionably constitutional as applied to them. There are no First Amendment problems. *See supra* pp. 36–51. "The First Amendment protects protest, not trespass." *Doe*, 947 F.3d at 878 (Ho, J., concurring

in denial of rehearing en banc). The Statute thus "may prohibit what plaintiffs want to do"—trespass on private property—without running afoul of the First Amendment. *See Holder*, 561 U.S. at 28, 39. Indeed, Plaintiffs essentially concede as much because they do not challenge the misdemeanor trespassing statute, which also prohibits trespassing on private property after being forbidden. *See* La. R.S. § 14:63.3.

Nor is there any Due Process problem. *See supra* pp. 52–61. The Infrastructure Trespassing Statute is not vague as applied to Plaintiffs. They cannot protest within a pipeline's right-of-way on private property if they are instructed to leave by an authorized person under state law, but they can protest in public parks and other locations. Because "the statutory terms are clear in their application to plaintiffs' proposed conduct," their "vagueness challenge must fail." *Holder*, 561 U.S. at 21.

To the extent Plaintiffs Savage and Meijía argue (at 34) that the Statute is vague as applied to them, because their arrests were unlawful, this argument fails. For starters, this argument ignores that only probable cause is necessary for arrest and that it was reasonable to believe that they were violating the Infrastructure Trespassing Statute (not to mention the misdemeanor trespassing statute that was also cited

in the arrest affidavits) at the time of their arrest. *See, e.g.*, ROA.1349, 1352, 1358-61, 1378-81, 1654-55; *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004) ("Probable cause exists when the totality of facts and circumstances within a police officer's knowledge *at the moment of arrest* are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." (quotation omitted)). More importantly, this argument "conflates the lawfulness of [their] arrest with the constitutionality" of the Statute. *See Langford*, 3 F.4th at 1060 ("If the police lacked probable cause to believe that Langford violated the ordinance, then she might establish a violation of the Fourth Amendment's prohibition on unreasonable seizures. But an improper arrest would not demonstrate that the ordinance violates the First Amendment or the Due Process Clause."). Even if the officers' factual determinations were wrong, they were applying objective standards that provided sufficient guidance.

## CONCLUSION

This Court should therefore affirm the district court's judgment dismissing the case. It can do so on several grounds, including concluding that: (1) no Plaintiffs have standing; (2) Arrestee Plaintiffs' claims are

moot; (3) the Attorney General's sovereign immunity is not waived; and (4) the Trespassing Infrastructure Statute does not violate the Constitution either facially or as applied. If the Court is nevertheless inclined to rule for Plaintiffs, it should remand the case rather than issuing summary judgment for Plaintiffs, especially given the evidentiary objections that would need to be resolved. *See supra* n.1; *Landry's, Inc. v. Ins. Co. of the State of Pennsylvania*, 4 F.4th 366, 372 n.4 (5th Cir. 2021).

Dated: September 23, 2024

Respectfully submitted,

ELIZABETH B. MURRILL
Attorney General of Louisiana

*/s/ Autumn Hamit Patterson*
J. BENJAMIN AGUIÑAGA
Solicitor General
AguinagaB@ag.louisiana.gov
AUTUMN HAMIT PATTERSON
Special Assistant Solicitor General

OFFICE OF THE ATTORNEY GENERAL
1885 N. Third Street
Baton Rouge, LA 70802
(225) 506-3746

*Counsel for Appellee Elizabeth B. Murrill, in her official capacity*

**CERTIFICATE OF SERVICE**

I certify that on September 23, 2024, I filed the foregoing motion with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all registered counsel of record.

*/s/ Autumn Hamit Patterson*
AUTUMN HAMIT PATTERSON

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this brief complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7) because it contains 12,981 words, excluding the parts of the document exempted by Rule 32(f); and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook font, except for footnotes in 12-point font) using Microsoft Word (the same program used to calculate the word count).

Dated:  September 23, 2024          */s/ Autumn Hamit Patterson*
                                    AUTUMN HAMIT PATTERSON