No. 24-30272
# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

ANNE WHITE HAT; RAMON MEJÍA; KAREN SAVAGE; SHARON LAVIGNE; HARRY JOSEPH; JOHN LAMBERSTON; PETER AASLESTAD; THEDA LARSON WRIGHT; ALBERTA LARSON STEVENS; JUDITH LARSON HERNANDEZ; RISE ST. JAMES; 350 NEW ORLEANS; and LOUISIANA BUCKET BRIGADE,

*Plaintiffs – Appellants,*

v.

ELIZABETH B. MURRILL, in her official capacity as Attorney General of Louisiana; BECKET BREAUX, in his official capacity as Sheriff of St. Martin Parish; M. BOFILL DUHÉ, in his official capacity as District Attorney of the 16th Judicial District Attorney's Office;

*Defendants – Appellees.*

On appeal from United States District Court for the Western District of Louisiana, Case No. 6:20-CV-983

## APPELLANTS' PETITION FOR PANEL REHEARING

| | |
|---|---|
| William P. Quigley | Baher Azmy |
| Loyola University College of Law | Astha Sharma Pokharel |
| 7214 St. Charles Ave. | Pamela Spees |
| New Orleans, LA 70118 | CENTER FOR |
| | CONSTITUTIONAL RIGHTS |
| | 666 Broadway, 7th Floor |
| | New York, NY 10012 |

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

REQUEST FOR PANEL REHEARING ............................................................... 1

INTRODUCTION .................................................................................................. 2

ARGUMENT .......................................................................................................... 3

   A. Factual Error: The Majority Overlooked the Fact that the Statute Includes Water Pipelines of Any Size or Length in the Definition of Critical Infrastructure. ............................................................................ 3

   B. The Majority Erroneously Imposed on *Wright v. Georgia* a Hierarchy of Constitutional Violations that the Supreme Court Did Not Require, and Overlooked Plaintiffs' Allegations and Arguments that the Statute in Fact Carries a 'Similar Likelihood of Unconstitutional Application.' ........ 6

   C. The Majority's Ruling Requires Clarification as it Raises a Question as to the Statute's Enforcement with Regard to Oil and Gas Pipelines on Private Property. .................................................................................. 10

   D. Plaintiffs Request that the Majority Reverse its Ruling, or, Alternatively, Amend it to Reflect the Foregoing Limitations and Require the Louisiana Attorney General to Notify District Attorneys of the Court's Limiting Construction of the Statute. ...................................................................... 13

CONCLUSION ..................................................................................................... 16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

APPENDIX - Opinion of June 20, 2025

# TABLE OF AUTHORITIES

**Cases**

*Erznoznik v. City of Jacksonville,* 422 U.S. 205 (1975) .................... 13

*Johnson v. United States,* 576 U.S. 591 (2015) .................... 6

*Kolender v. Lawson,* 461 U.S. 352 (1983) .................... 8

*Louisiana Energy Gateway LLC v. Trunkline Gas Co., LLC*, 2024-544 (La. App. 3 Cir. 4/2/25) .................... 12

*Porter v. Warner Holding Co.,* 328 U.S. 395 (1946) .................... 15

*Swann v. Charlotte-Mecklenburg Bd. of Ed.,* 402 U.S. 1 (1971) .................... 15

*United States v. Stevens,* 559 U.S. 460, 473 (2010) .................... 6

*Wright v. Georgia,* 373 U.S. 284 (1963) .................... 7-8

**Statutes**

La. R.S. 14:61, *et seq.* .................... *passim*

La. Code of Cr. Proc. Art. 62(A) .................... 15

# REQUEST FOR PANEL REHEARING

Pursuant to Fed. R. App. Proc. 40 and Fifth Circuit Rule 40, Plaintiffs respectfully petition for a panel rehearing of the Court's 2-1 decision issued on June 20, 2025, annexed hereto as Appendix A, which affirmed the judgment of the district court, with a written dissent. A rehearing is necessary because the majority's opinion contained legal and factual errors material to the disposition of a central question in this matter, i.e. whether the law challenged is void for vagueness in violation of the Due Process Clause. These errors further demonstrate the difficulty in curing the defects in this Statute through a limiting construction. The majority's ruling also raised a key question as to its interpretation and intention with regard to the limiting construction and the law's reach on private property and non-public forums. Finally, in light of these concerns, Plaintiffs request that the majority either: 1) reverse its ruling and declare the Statute void for vagueness, and leave it to the Louisiana legislature to determine how to bring the Statute within constitutional bounds, or, 2) amend its ruling to reflect the necessary clarifications and limitations as set forth below. If the majority chooses the latter approach, Plaintiffs ask that it require the Louisiana Attorney General to notify all district attorneys in the state of this Court's ruling and limiting construction, in accordance with her statutorily-mandated supervisory authority.

## INTRODUCTION

In this case challenging the constitutionality of Louisiana's 2018 amendments to the Critical Infrastructure Trespass Law, contained at La. R.S. 14:61 *et seq.*, a central question on appeal is whether a provision of that law was rendered unconstitutionally vague once pipelines were added to the definition of critical infrastructure without limitation or qualification. Specifically, La. R.S. 14:61(A)(3) prohibits "[r]emaining upon or in the premises of a critical infrastructure after having been forbidden to do so, either orally or in writing, by any owner, lessee, or custodian of the property or by any other authorized person." The 2018 amendment defined "pipeline" for purposes of its inclusion in the definition of "critical infrastructure" as "flow, transmission, or gathering lines, regardless of size or length, which transmit or transport oil, gas, petrochemicals, minerals, or water in a solid, liquid, or gaseous state." La. R.S. 14:61(B)(3).

Plaintiffs contend that the incorporation of pipelines into the definition of "critical infrastructure" without defining the area intended to be covered rendered "premises" in this provision unconstitutionally vague. At summary judgment, the district court adopted a limiting construction that the Statute does not apply to traditional public forums. The court then determined that the law is not unconstitutionally vague as applied to private property and non-public forums. The panel majority in this Court affirmed the district court's ruling and construction.

2

Plaintiffs appealed, in part, because of the concern that the law is still vague even on private property and non-public forums because it does not provide enough notice to landowners or guidance to law enforcement as to how to determine the premises of a pipeline, or who has authority to exclude a person from those premises. That concern still exists in the wake of the majority's decision.

## ARGUMENT

The majority's ruling that the Statute as amended in 2018 was not void for vagueness, after a limiting construction adopted by the district court, contained legal and factual errors that were material to its vagueness analysis. The majority accepted the district court's limiting construction that the law does not encompass pipelines in traditional public forms to avoid finding it void for vagueness in violation of the Due Process Clause of the Fourteenth Amendment, but did so in a way that requires further clarification as to the law's reach on private property.

**A. Factual Error: The Majority Overlooked the Fact that the Statute Includes Water Pipelines of Any Size or Length in the Definition of Critical Infrastructure.**

The majority did not acknowledge or grapple with the fact that the Statute also includes water pipelines – "regardless of size or length" – in the definition of critical infrastructure, or how the limiting construction that the law does not apply to public forums addresses that concern. The majority summarized Plaintiffs' concern about the vagueness of the Statute as being that it applies to "125,000 miles of pipeline

across Louisiana." Ruling at 18 (internal quotations omitted). But Plaintiffs have made clear throughout this litigation, including on appeal, that their concern is not only about the 125,000 miles of *oil and gas* pipelines in the state, but also the unknown mileage of *water* pipelines of any size or length. *See* Pl. Opening Brief at 24 ("Virtually every modern park, street, or public forum has a pipeline of some kind, *including water*, running in, under, near, or through it.") (emphasis added); ROA 977 (Pl. Summary Judgment Brief) ("In addition to oil and gas pipelines, the statute also encompasses *unknown number of miles of pipelines transporting water and other minerals*.") (emphasis added); *id*. at ROA 988 ("With over 125,000 miles of oil and gas pipelines in the state of Louisiana, *plus an unknown number of miles of pipelines carrying water and other minerals*, the state enacted a dramatically overbroad statute and a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.") (emphasis added) (internal quotations omitted); ROA 1915-16 (Pl. Motion to Reconsider Ruling on Summary Judgment) ("The amendment's addition of pipelines to the Statute blew the definition of critical infrastructure wide open, and now extends to unknowable reaches around the more than 125,000 miles of oil and gas pipelines in the state, *as well as untold miles of pipelines carrying water*, 'regardless of size or length,' as well as other petrochemical and mineral pipelines.") (emphasis added); *id*. at 1916

4

("Virtually every modern park, street, and building has a pipeline of some kind, *particularly water*, running in, under, near or through it.") (emphasis added).

It is true that the parties have focused much attention on oil and gas pipelines given that the legislation was authored by an industry lobbyist in response to protests against an oil pipeline, Plaintiffs were arrested under the amended Statute while protesting that oil pipeline, and, in particular, the proliferation of oil and gas pipelines in the state. However, Plaintiffs have clarified at different points in this litigation, including at oral argument,[1] that the concerns about the Statute's reach are further exacerbated by the fact that water pipelines of any size or length are included in the definition - *in addition* to the 125,000 miles of oil and gas pipelines.

Neither the district court, nor the majority, explained how the Statute is supposed to operate with regard to water lines, nor how the fact that the Statute is construed as not applying to traditional public forums addresses this question. Virtually every house, building, movie theatre, restaurant, or other public accommodation contains water pipelines of some size or length. Applying the Critical Infrastructure Trespass law to felonize remaining after being forbidden at a private home or business establishment which have water pipelines in them and subjecting someone to up to five years in prison defies logic – particularly in light

---

[1] Oral Argument at 45:46, in response to a question from Judge Higginson concerning the definition of pipelines.

of the origin and purported purpose of the amendments. Questions as to enforcement abound: Who owns the water lines in a home or business? Are they public or privately-run systems? Who is a person authorized to exclude others? And what constitutes the premises of water pipelines? How do law enforcement officers answer these questions?

These questions further demonstrate the extremely problematic vagueness of the Statute, both in terms of lack of notice as to what conduct (mere presence) is forbidden and where, and who decides, but also the potential for arbitrary and discriminatory enforcement given the lack of guidance to law enforcement officers. In other words, it is "so standardless that it invites arbitrary enforcement." *Johnson v. United States,* 576 U.S. 591, 595 (2015). These questions also demonstrate the overbreadth of the Statute, particularly with regard to First Amendment right of association, including on property one owns, in that "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens,* 559 U.S. 460, 473 (2010).

**B. The Majority Erroneously Imposed on *Wright v. Georgia* a Hierarchy of Constitutional Violations that the Supreme Court Did Not Require, and Overlooked Plaintiffs' Allegations and Arguments that the Statute in Fact Carries a 'Similar Likelihood of Unconstitutional Application.'**

The majority ruled that the Statute's requirement of an instruction to leave before someone can be charged with violating subsection (A)(3), helps save the Statute from concerns about its vagueness and potential for arbitrary and

6

discriminatory enforcement. The majority noted that Plaintiffs argued, citing *Wright v. Georgia,* 373 U.S. 284, 291-92 (1963), that the simple fact that the Statute requires an instruction to leave cannot cure the vagueness because "one cannot be punished for failing to obey the command of an officer if that command is itself violative of the Constitution." Ruling at 19-20.

The majority attempted to distinguish the concerns about the susceptibility of unconstitutional application of this Statute from the situation in *Wright* by suggesting that "the 'command' issued in *Wright* carried an exponentially high degree of unconstitutionality [because] the officers attempted to justify their 'intention to enforce racial discrimination' by arguing that the petitioners, who were playing basketball at a public park, were breaching the peace." *Id*. at 19. The majority then went on to suggest that Plaintiffs, "in contrast, do not allege that the district court's limiting construction of the Infrastructure Trespass Statute carries a similar likelihood of unconstitutional application." *Id*. at 19-20.

First, the majority cited no authority for its suggestion that the Supreme Court intended in *Wright* that, for an instruction, or "command," to be considered unconstitutional, it must carry "an exponentially high degree of unconstitutionality" and / or be intended to "enforce racial discrimination." The Supreme Court simply and clearly held that a person cannot be punished for failing to obey the command of an officer that is itself violative of the Constitution. *Wright* at 292. It happened

that one of the ways in which the command in *Wright* was unconstitutional is that the officers intended to enforce racial discrimination which gave rise to an Equal Protection claim under the Fourteenth Amendment. *Id*. To be sure, racial discrimination is a serious and profound violation of the Constitution, but the Court in *Wright* did not suggest in its ruling that only commands intending to enforce racial discrimination are unconstitutional and need not be obeyed, nor did it suggest any other kind of ranking among types of unconstitutional commands. Indeed, the Supreme Court has invalidated a vague loitering statute because it had the "potential for arbitrarily suppressing First Amendment liberties" and the "constitutional right to freedom of movement" when it also emphasized that the potential for arbitrary enforcement, through lack of clear guidance in a statute, was even "more important" than the notice a law provides to citizens. *See Kolender v. Lawson,* 461 U.S. 352, 357-58 (1983). Due process violations which lead to unlawful deprivations of liberty are also "exponential" in their unconstitutionality and harmful effects. Failure to obey an officer command to leave an undefined premises of a pipeline where a person otherwise has a right to be present amounts to a due process violation that carries serious and long-lasting repercussions – in this case up to five years' imprisonment at hard labor.

Even so, a fair reading of the allegations in the Complaint, record evidence and arguments, demonstrates that Plaintiffs have alleged that the Statute is

8

susceptible of what the majority described as "a similar likelihood of unconstitutional application," Ruling at 20, including discriminatory enforcement. Plaintiffs have long alleged and argued that the Statute's vagueness, including after the limiting construction, is rife with the potential for serious and profound unconstitutional applications, in particular the danger of arbitrary – and discriminatory – and enforcement. *See, e.g.*, Pl. Opening Appellate Br. at 25 (arguing Statute's vagueness and overbreadth combine to chill landowners' First Amendment rights and neither they nor law enforcement would have sufficient notice about where they or their guests could remain after being forbidden); *id*. at 30 (noting that, as in *Wright*, the Statute fails to give adequate notice of the (literal) boundary between permissible and constitutionally impermissible applications and danger of impermissibly suppressing First Amendment rights including of Landowners' rights of association); Pl. Reply Br. at 13-15 (distinguishing cases where statutes were found not to be vague because of the notice and limitations imposed); ROA 62 (Complaint) ¶113 (alleging that the law invites discretionary and arbitrary enforcement in violation of the Fourteenth Amendment); *id*. ¶¶ 56-60, 63 (listing a number of ways in which the Statute's vagueness as to what constitutes premises of a pipeline on private property renders the Statute susceptible to arbitrary and discriminatory enforcement). When a Statute like this one does not give adequate notice to those subject to the law, nor adequate guidance to law enforcement about

9

how to enforce it, it is inherently susceptible of arbitrary and discriminatory enforcement, which includes the possibility of racially discriminatory enforcement.

The majority's decision erroneously imposed a hierarchy of constitutional violations that does not exist in the Supreme Court's pivotal ruling in *Wright*, and then overlooked Plaintiffs' allegations and arguments which, under a fair reading, show that the Statute and officer commands pursuant thereto would be susceptible of such serious unconstitutional applications – even after the limiting construction.

**C. The Majority's Ruling Requires Clarification as it Raises a Question as to the Statute's Enforcement with Regard to Oil and Gas Pipelines on Private Property.**

In addition to the concerns about how the majority's ruling should affect the Statute's application to water pipelines as set out above, Plaintiffs seek clarity as to how the majority intends for the Statute to apply to oil and gas pipelines on private property and non-public forums, which appeared to be the focus of the majority's ruling. In particular, Plaintiffs seek to clarify whether the Statute is only applicable to oil and gas pipelines on private property where there are either (1) visible markers or enclosures around the pipeline or pipeline construction site, and (2) verifiable and recorded rights of way that include the right to exclude.

The majority's ruling suggests that the Statute should only be applied to pipeline structures that are visible, marked, or in enclosed areas. The majority assessed the testimony of law enforcement officers who were involved in the arrests

10

of three of the Plaintiffs, and their responses as to how they would approach enforcing the law when pipelines are unmarked and underground. The majority explained that one of the officers testified that he "wouldn't enforce" the statute in such a situation, and that another officer would take an approach similar to the first officer's in that he would look for markers or "survey lines placed there" and determine whether someone was in the right-of-way. Ruling at 22.

The majority cited this testimony, seemingly with approval, to show that the officers' understanding of the Statute and their approaches to enforcement were consistent. This aspect of the majority's ruling suggests that it intends that the Statute should not be enforced with respect to unmarked, underground pipelines on private property. If that is the case, then Plaintiffs' request that the majority make clear in its limiting construction that the law should only be applied to premises of pipelines that are visible, marked, and/or above-ground. If, however, the majority intended or believes that the Statute should be applied to invisible, unmarked, underground pipelines, then the officers' testimony is further evidence of the potential for confusion and arbitrary enforcement of the law.

Second, the majority identified the following elements as required before law enforcement can enforce subsection (A)(3):

> (1) a pipeline construction site or pipeline on private
> property (or on public property that is not open to
> the public) and (2) a person who has refused to leave

>  the construction site or pipeline right-of way despite
> (3) a request made by a person with legal authority.

Ruling at 20. However, the existence of a right-of-way or a construction site does not automatically grant a pipeline company the legal authority to exclude another. When a pipeline company obtains a right of way or easement, it generally only obtains a limited right of *use*, and does not automatically obtain the right to *exclude* others from the property that the pipeline is in. *Louisiana Energy Gateway LLC v. Trunkline Gas Co., LLC*, 2024-544 (La. App. 3 Cir. 4/2/25), reh'g denied (June 11, 2025) ("the right of use servitude is a limited personal servitude that does not give its holder the exclusive use of the land to which the servitude is subject.") In other words, pipeline companies may have an easement on another's private property that includes the right to pass through the land and to construct a pipeline, but does not include the right to exclude others.

Indeed, this was the case with the pipeline company's right of way that it obtained with some of the co-owners of the 38 acres at issue in this case. ROA.215-26. That right of way did not include the right to exclude others. Similarly, the expropriation judgment granted the pipeline a right of way over a portion of the 38

acres at issue, but it did not include the right to exclude other persons from any portion of those 38 acres. ROA.739-40.[2]

Plaintiffs seek to clarify that, under the Court's limiting construction, the Statute cannot be enforced in property where an entity such as a pipeline company holds an easement or right of way on the property, but does not also hold the right to exclude others.

### D. Plaintiffs Request that the Majority Reverse its Ruling, or, Alternatively, Amend it to Reflect the Foregoing Limitations and Require the Louisiana Attorney General to Notify District Attorneys of the Court's Limiting Construction of the Statute.

In light of these concerns and outstanding questions, the majority's ruling did not clearly answer the question of what constitutes the "premises" of a pipeline for purposes of enforcement of this felony statute, even when limited to private property or non-public forums, and particularly when considering the inclusion of water pipelines of any size or length. The questions that remain even after the limiting construction demonstrate that the Statute is not "easily susceptible" to a construction intended to render it constitutional. *See Erznoznik v. City of Jacksonville,* 422 U.S. 205, 216-217 (1975). Plaintiffs thus request that the majority reverse its ruling and hold the Statute as amended to include pipelines in 2018, is void for vagueness, and

---

[2] It did include the right "time to time, to clear the Permanent Right of Way, during the term thereof, of all trees, undergrowth, and other natural or manmade obstructions . . . " ROA.740, but not the right to exclude others.

13

provide guidance to the Louisiana legislature as to the appropriate constitutional contours for the inclusion of pipelines as critical infrastructure subject to the law.

Should the Court choose not to reverse its ruling, given the serious and profound liberty interests at stake in this matter, the need for precision, and lack of specificity in the Statute, Plaintiffs request that the Court further clarify the scope and extent of its limiting construction, as follows:

1) La. R.S. 14:61 shall not be enforced on public property that is open to the public, including, but not limited to, public sidewalks, parks, or government buildings,[3] and navigable waterways.[4]

2) La. R.S. 14:61(A)(3) shall only be enforced on private property where pipelines, or their rights-of-way are visible, marked, and/or above-ground;[5] <u>and</u>

3) La. R.S. 14:61(A)(3) shall only be enforced where verifiable and recorded rights-of-way include the right of the servitude or easement owner to exclude others.[6]

4) With regard to water pipelines, in light of the asserted purpose of the amendments, the Statute should not be enforced in private homes, businesses, or other public accommodations. The Statute should only be

---

[3] Ruling at 18.
[4] Ruling at 34 (Higginson, J., dissenting).
[5] Ruling at 21.
[6] Ruling at 19.

enforced with respect to water pipelines at water intake structures, water treatment facilities, floodgates or pump stations, that are visible, marked, and above-ground.

Further, pursuant to this Court's broad equitable powers, Plaintiffs request that the Court require the Louisiana Attorney General to notify the district attorneys in the state of this ruling and its limiting construction, and provide confirmation that this notice has been provided. *Porter v. Warner Holding Co.,* 328 U.S. 395, 398 (1946) (courts' "equitable powers assume an even broader and more flexible character" when the public interest is involved than when only a private controversy is at stake); *Swann v. Charlotte-Mecklenburg Bd. of Ed.,* 402 U.S. 1, 15, (1971) (noting that "breadth and flexibility are inherent in equitable remedies").

Pursuant to La. Code of Cr. Proc. Art. 62(A), the "attorney general *shall* exercise supervision over all district attorneys in the state." (emphasis added). Moreover, this Court has relied on the Attorney General's limiting construction and the fact that she has "disclaimed enforcement of the statute on pipelines located on public property, unless that property 'is not open to the public.'" Ruling, n. 4. In light of her statutorily-mandated supervisory authority and the Attorney General's avowal in this litigation that the Statute should not be enforced on public property that is open to the public, Plaintiffs believe it is necessary and proper for this Court

to order the Attorney General to issue a notice of this Court's ruling and limiting construction of the Statute.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request a rehearing before this Panel, or further clarification and amendment of the majority's ruling as set forth above.

Respectfully submitted,

/s/Pamela C. Spees
Baher Azmy
Astha Sharma Pokharel
Pamela C. Spees
La. Bar Roll No. 29679
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel. & Fax (212) 614-6431
pspees@ccrjustice.org
bazmy@ccrjustice.org
asharmapokharel@ccrjustice.org

William P. Quigley
La. Bar Roll No. 7769
Professor Emeritus
Loyola University College of Law
7214 St. Charles Avenue
New Orleans, LA 70118
Tel. (504) 710-3074
quigley77@gmail.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 40(d)(3) because it contains 3,619 words, excluding the parts exempted by Rule 32(f); and (2) the typeface and type style requirements of Rule 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman for text and 12-point Times New Roman for footnotes) using Microsoft Word (the same program used for the word count).

/s/Pamela C. Spees
PAMELA C. SPEES

**CERTIFICATE OF SERVICE**

Undersigned counsel hereby certifies that on July 21, 2025, this filing was served via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov, upon all registered CM/ECF users in this appeal.

/s/Pamela C. Spees
PAMELA C. SPEES